**Ex parte Wendell Keith WHITE.**

**Nos. 74757, 74758.**

Court of Criminal Appeals of Texas.

Sept. 29, 2004.

Rehearing Denied Dec. 15, 2004.

Randy Schaffer, The Schaffer Firm, Houston, for Applicant.

District Attorney's Office, Houston, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion of the Court, in which KELLER, P.J., and WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

The applicant seeks habeas corpus relief from his convictions for murder and aggravated assault. The convictions stem from the applicant's actions after an altercation in a bar in Harris County. In fleeing from the bar, the applicant ran over Latasha Vasquez and Tracey Johnson with his pickup truck. The main issue during the sin-

gle trial was whether the applicant ran over the women intentionally.

 In his challenge to the conviction, the applicant claims that his trial counsel were ineffective for opening the door to the prosecutor's cross-examination about the applicant's post-arrest silence.[1] The applicant also raised six other claims of ineffective assistance of counsel.[2] To obtain habeas corpus relief for ineffective assistance of counsel under *Strickland v. Washington*, the applicant must show that counsels' performance was deficient and that a probability exists, sufficient to undermine our confidence in the result, that the outcome would have been different but for counsels' deficient performance.[3]

The convicting court agreed with the applicant and found that trial counsels' performance had been deficient for opening the door to the prosecutor's questions.[4] The convicting court also found four other instances of deficient performance. In addition, the convicting court found that there was a reasonable probability that the outcome of the case would have been different if counsel had not opened the door to testimony regarding the applicant's post-arrest silence. The other errors committed by counsel further undermined the convicting court's confidence in the result of the trial. The convicting court recommended that we grant relief.

We disagree with the convicting court's recommendation and deny relief because the record does not support the convicting court's conclusion that a probability existed that a different outcome would have occurred but for counsels' deficient performance. We will address all of the claims raised by the application for habeas corpus relief.

## I. Factual and Procedural Background

On an April night in 1998, the applicant went to a bar in Harris County and became embroiled in a dispute because Johnson, another bar patron, alleged that the applicant harassed her verbally.[5] This dis-

---

1. We note that ineffective assistance of counsel claims, though they may be raised on direct appeal, are most effectively raised in habeas proceedings. The reason for this has been explained in many of our cases: the record on direct appeal is usually inadequate to determine whether trial counsel acted consistent with a reasonable trial strategy. All current members of the Court have agreed with this principle. *See, e.g., Ex parte Nailor*, 149 S.W.3d 125 (Tex.Crim.App.2004) (Cochran, J., delivered the unanimous opinion of the Court) ("Claims of ineffective assistance of counsel are frequently raised on direct appeal without the benefit of an adequate record and then re-urged on a writ of habeas corpus after they have been adequately developed in a post-conviction evidentiary hearing").

2. The applicant also claims that counsel were ineffective for (1) failing to conduct an adequate investigation to discover the testimony of the bar manager that could have impeached other testimony about the events of the night of the killings; (2) failing to object to lay testimony by an eyewitness that the applicant intentionally ran over the victims; (3) failing to object to testimony by two police officers that the applicant intentionally ran over the victims; (4) failing to object to testimony that one of the victims was pregnant and that the fetus died; (5) the failure to request a lesser-included instruction on manslaughter and criminal negligent homicide on the murder charge; and (6) the failure to object to the prosecutor's argument during the punishment phase that the applicant showed no remorse.

3. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1994).

4. The convicting court also found trial counsel deficient in four of the six other claims. The convicting court made no findings regarding the second *Strickland* prong on these claims.

5. The facts about the altercation and its genesis were in dispute at trial. As mentioned above, the main issue at trial was whether the applicant ran over the victims intentionally *after* the altercation.

pute escalated, and the applicant left the bar and got into his truck. Johnson's friend followed the applicant and punched him in the face, knocking off the applicant's glasses.

The applicant drove his truck toward a restaurant that shared the parking lot with the bar. The applicant then turned his truck around and drove toward the bar, which was away from the exit. He hit Johnson with his truck. A crowd gathered and yelled that Johnson was under the applicant's truck. The applicant revved his engine and then accelerated, running over Johnson again and hitting Vasquez who was trying to help Johnson out of the way of the truck. Johnson suffered severe injuries and Vasquez, who was pregnant, was killed as a result of being run over by the applicant.

The applicant drove home. Two of the bar patrons followed the applicant home and called the police. The police went to the applicant's home, asked him his name, and asked him if the truck in the driveway belonged to him. The police arrested him and read him his rights under Code of Criminal Procedure Article 38.22, Section 2. The applicant was silent except during a transfer from one police car to another when he said that he had been home all night. The applicant did not mention that he had been in an altercation or that someone had punched him.

The State charged the applicant with murder for killing Vasquez and attempted murder for the injuries to Johnson. During the trial, the applicant's theory of the case was that he did not intentionally run over the victims with his truck. He had been beaten up, lost his glasses,[6] and had been scared for his life. He did not realize that he had hit Johnson and Vasquez. Also, he was surprised that the police arrested him.

When the applicant testified at trial, counsel asked him whether he had told the police his version of what had happened at the bar. The applicant replied that he had not.

Before the jury charge was given to the jury, the State requested a lesser-included offense instruction on aggravated assault for the attempted murder charge. The applicant objected. In his affidavits submitted during the habeas proceedings in this case, trial counsel[7] said that he discussed lesser-included offense instructions with the applicant during the trial and that the applicant wanted to pursue an acquittal. The applicant did not want lesser-included offense instructions included in the charge. The applicant objected to the inclusion of the instruction, and the convicting court overruled the objection.

## II. The Standard and Test for Ineffective Assistance of Counsel Claims

We afford almost total deference to a trial court's factual findings in habeas proceedings, especially when those findings are based upon credibility and demeanor.[8] However, if the trial court's findings of fact are not supported by the record, then we may reject its findings.[9]

---

**6.** Although the applicant testified that he lost his glasses, another witness testified that the applicant had been wearing his glasses when he ran over the victims.

**7.** During the trial, the applicant had two attorneys who were married to each other. Only one attorney submitted an affidavit in these proceedings.

**8.** *Ex parte Martin,* 6 S.W.3d 524, 526 (Tex. Crim.App.1999).

**9.** *Ex parte Adams,* 768 S.W.2d 281, 288 (Tex. Crim.App.1989).

Under *Strickland v. Washington*,[10] to prevail on an ineffective assistance of counsel claim, the applicant must show that (1) counsels' performance was deficient by falling below an objective standard of reasonableness and (2) there is a probability sufficient to undermine the confidence in the outcome that but for counsels' unprofessional errors, the result of the proceeding would have been different.[11] We "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable assistance," and that "the challenged action 'might be considered sound trial strategy.'"[12]

## III. Claims

A. No probable change in outcome for opening the door to questions and argument regarding post-arrest silence.

██ In his first claim, the applicant claims that trial counsels' performance was deficient for failing to file a motion in limine for or to object to testimony and argument that applicant failed to tell his exculpatory version of the events to the police after his arrest. The applicant also alleges that counsel were deficient in opening the door to this testimony. In his affidavit, counsel said that he believed the best way to advance the theory of the case that the applicant had not intentionally run over the victims was to demonstrate that the applicant was actually a victim of circumstance. Specifically, counsel elicited testimony from the State's civilian witnesses that the applicant was assaulted, lost his glasses, and left the scene in a hurry with a bloody nose. In addition, the applicant bolstered this trial strategy by testifying that he was scared out of his mind while fleeing from other bar patrons,

was rudely taken from his home, was arrested, booked, and then eventually learned from a property clerk and jailhouse television that he had been charged.

The convicting court found that the direct examination of the applicant regarding his failure to tell his exculpatory version of events and his failure to object to the testimony regarding his post-arrest silence did not advance counsels' trial strategy. The convicting court also concluded that a probability existed that the outcome would have been different but for counsels' error because the State fully exploited the error. We will assume without deciding that trial counsels' performance was deficient for asking about the applicant's post-arrest silence and opening the door to the State's cross examination on this point. We conclude that the record does not support the conclusion that a probability exists that the result would have been different but for counsels' actions because (1) ample evidence existed in the record from which a rational jury could conclude that the applicant intentionally ran over the victims; and (2) before the applicant testified, the theory of the case had already been undermined by testimony that the applicant had told one of the officers that he had been home all night.

The testimony taken during the trial was ample for a rational jury to conclude that the applicant intentionally ran over the victims. There was testimony that the applicant, though parked near the exit, drove back toward the bar where the victims were standing. A witness testified that the applicant revved his engine before running over the victims even though other bar patrons were yelling that Johnson

10. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

11. *Ibid.*

12. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

was under his truck. A witness also testified that the applicant was actually wearing his glasses when he ran over the victims.

Also, to the extent that the applicant's theory of the case was damaged by the question about the applicant's post-arrest silence, this theory had already been undermined by an officer's testimony that the applicant had told him that he had been home all evening. There was evidence that the applicant did not remain silent. And, when he did speak, he told the police that he had been home all night and not that he had narrowly escaped the attack of an angry mob.

We conclude that the record does not support the conclusion that there was a probability of a different outcome had trial counsel not opened the door to testimony about the applicant's post-arrest silence.

### B. Defense counsel performed an adequate investigation.

■■■■ In his second claim, the applicant complains that trial counsel failed to conduct an adequate investigation and failed to discover valuable impeachment evidence. Specifically, the applicant alleges that trial counsel failed to investigate and interview Jerry Thompson, the manager of the bar where the crimes occurred. To obtain relief on an ineffective assistance of counsel claim based on an uncalled witness, the applicant must show that Thompson had been available to testify and that his testimony would have been of some benefit to the defense.[13] We conclude that counsel conducted an adequate investigation and that Thompson's testimony would not have been of benefit to the applicant in his case.

In affidavits submitted to the habeas court, trial counsel stated that he had hired a private investigator whom he had used for seventeen years to visit the scene and interview witnesses. While preparing for trial, counsel visited the scene himself a number of times to observe the placement of items and distances and to speak to witnesses.

An affidavit from Thompson is attached to the application for habeas relief. Thompson explained that he was at home when a bartender called him to tell him that a bar patron had run over two other bar patrons in the parking lot. Thompson went to the bar and spoke with the witnesses. He said that the witnesses generally agreed on what had happened, and he told the version of the facts as he heard it from the witnesses the night of the incident. He did not ascribe any particular part of his narrative to any particular witness. His version of the facts contradicted some of the testimony that was adduced at trial, including the applicant's own testimony. Thompson said that he was never contacted by the police, the prosecutors, or defense counsel.

The convicting court found that defense counsel performed an adequate investigation and that he was not deficient for failing to find the witness. We agree with the convicting court that defense counsel performed an adequate investigation. We also conclude that Thompson's testimony, as presented in the affidavit would not have been beneficial to the applicant's case. Although Thompson gave a list of the witnesses he spoke to, he did not say who told him what details. As a result, Thompson's testimony would have been of little value for impeaching the State's witnesses. Also, Thompson's affidavit contradicted the applicant's testimony, which would have undermined the applicant's credibility. We conclude that counsels'

---

13. *King v. State,* 649 S.W.2d 42, 44 (Tex.Crim. App.1983).

performance was not deficient and that the record does not support a conclusion that a probability exists that there would have been a different outcome to the trial.

### C. Defense counsel were not deficient in failing to object to lay opinion testimony.

 In his third claim, the applicant complains that trial counsel were ineffective because they failed to file a motion in limine or to object to lay opinion testimony that the applicant intentionally ran over the victims. To show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the objection.[14]

A witness can testify in the form of an opinion under Rule 701 if the opinions or inferences are (a) rationally based on his or her perceptions and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue.[15] The testimony that the applicant intentionally ran over the victims with his truck was admissible under Texas Rule of Evidence 701 because the lay witness's opinion was rationally based on his own perception and was helpful in the determination of a fact in issue.

The trial court found that the lay testimony about which the applicant complains was admissible. We agree with the convicting court's finding and conclude that, because the testimony was admissible under Rule of Evidence 701, trial counsel were not ineffective for failing to object.

### D. No probable change in result for failing to object to officers' opinion testimony.

 In his fourth claim, the applicant alleges that trial counsel were ineffective for failing to file a motion in limine or to object to the opinion testimony of two police officers that the applicant had committed murder. Specifically, the applicant alleges that counsel failed to object to accident investigator Nita Corman's testimony that she determined from witness interviews that the applicant "had deliberately run over the young ladies" and to homicide detective Bob King's testimony that he had been to a "murder scene" and that the applicant had "intentionally committed murder." We conclude that the applicant has not met the prejudice prong of the *Strickland* test.

As we said above, the court of appeals determined on direct appeal that there was evidence that the applicant had his glasses on when he ran the victims over; that, even though he was parked near a parking lot exit, he drove back toward the bar where the victims were; that the applicant revved his engine before running over both victims; and that the crowd was yelling at the applicant that Johnson was under the truck. Also, there was testimony from a lay witness that he thought that the applicant had run over the victims intentionally.

Trial counsel stated in his affidavit that he did not object to the testimony in the presence of the jury because he did not want to highlight the evidence if the objection was overruled. The convicting court found that counsel performed deficiently for failing to object.

Even if we were to assume that counsel should have objected to this testimony, we conclude that the record does not support the conclusion that the applicant met the second prong of the *Strickland* test. There was ample evidence that the applicant had run over the victims intentionally.

---

**14.** *See Vaughn v. State,* 931 S.W.2d 564, 566 (Tex.Crim.App.1996).

**15.** *Osbourn v. State,* 92 S.W.3d 531, 535 (Tex. Crim.App.2002).

It is unlikely, in the face of all the evidence that the jury heard about the events of the evening, that the jury would have reached a different conclusion in the absence of Corman's and King's testimony. We cannot say that there is a probability that the outcome would have been different if counsel had objected to the testimony.

### E. No probable change in outcome for failing to object to evidence about the victim's pregnancy.

In his fifth claim, the applicant alleges that trial counsel were ineffective for failing to file a motion in limine or to object to the assistant medical examiner's testimony that Vasquez was pregnant, that he observed the fetus in her womb, and that the fetus had died. The applicant also complains that counsel failed to object to the prosecutor's references to the existence of the unborn child during closing argument.

In its findings of fact, the trial court found counsel deficient because the victim's pregnancy and the death of her fetus were irrelevant and highly prejudicial. But we cannot say that, if an objection had been sustained and the testimony excluded, the result of the trial probably would have been different. The main issue that was contested in this case was whether the applicant had run over the victims intentionally or mistakenly. The testimony about which the applicant complains was brief and was not directly related to this main issue. Also, the testimony about the pregnancy and the references made during argument were brief.

The assistant medical examiner testified about the general condition of Vasquez's body, the wounds that he found on her body, the toxicology report, the cause of death, and the fact that Vasquez had been pregnant when she died. The pregnancy was mentioned in passing, and the State did not dwell on this fact.

Argument during the guilt phase lasted about one hour according to the docket sheet. Five brief references to the pregnancy were made during the argument: three by defense counsel and two by the State in response.

The first mention by defense counsel was near the beginning of the argument. Defense counsel noted that this was a horrible case because one woman was badly injured and a pregnant woman had been killed. In the second reference to the pregnancy during argument, defense counsel noted that Vasquez was a seventeen-year-old woman who was pregnant and had a blood alcohol content of .07. Defense counsels' third reference to the pregnancy came near the end of the argument. Counsel stressed that the whole situation had been an accident and that the applicant had not meant to kill Vasquez and the fetus she carried.

Near the end of its argument, the State responded to defense counsels' second reference to the pregnancy by saying that the facts defense counsel mentioned, that Vasquez was young, pregnant, and had been drinking, were not relevant to the case. The State argued that neither Vasquez nor the fetus she carried deserved to die. The State made a second reference to the pregnancy when it argued that it was not the victim's fault that she and the fetus were killed.

The focus of the argument by both the State and defense counsel dealt with whether the applicant intentionally ran over the victims with his truck. Although defense counsel went off-topic to mention the pregnancy and the State responded, these references were brief and did not draw a lot of attention away from the main contested issue.

It is unlikely that the jury's decision regarding the applicant's guilt would have been different even if the trial court had sustained an objection by counsel to the admission of testimony about the pregnancy. We cannot say that there is a probability of a change in the outcome if counsel had objected to the testimony about the victim's pregnancy.

### F. Failure to request a lesser-included offense instruction was a reasonable trial strategy.

██ In his sixth claim, the applicant alleges that counsel were ineffective for failing to request jury instructions on the lesser-included offense of manslaughter and criminally negligent homicide. In his affidavit, trial counsel asserted that he discussed instructions on the lesser-included offenses with the applicant and deferred to the applicant's decision not to request them.

In its findings of fact, the convicting court found that, although the applicant wanted to adopt an all-or-nothing trial strategy, such a strategy was unreasonable and trial counsel should have requested jury instructions on the lesser-included offenses. However, it was the applicant, in not wanting to request the instructions, that sought the all-or-nothing strategy in the case. Just because the another attorney would have pursued another strategy does not make this strategy unreasonable, especially in light of the applicant's decision. We conclude that counsel were not ineffective for failing to request an instruction that the applicant did not want.

### G. No probable change in outcome for failure to object to State's punishment argument.

██ In his last claim, the applicant alleges that trial counsel were ineffective by failing to object to the prosecutor's argument that the applicant did not show remorse when the families of the victim testified. Trial counsel did not mention this claim in his affidavit. In its response, the State claimed that at trial it was responding to counsel's argument about the emotional testimony a family member of one of the victims. The convicting court found that the defense counsel's comment during argument that everyone in the courtroom had tears in their eyes did not invite the prosecutor's comment that the applicant did not look like he cared. As a result, the convicting court concluded, trial counsel should have objected.

Although trial counsel's performance may have fallen below the objective standard of reasonableness in failing to object to the prosecutor's argument, the record does not support a conclusion that, if counsel had objected to this argument, there is a probability that the outcome of the proceeding would have been different. The statement about which the applicant complains was one comment in the middle of an argument that predominantly focused on the applicant's actions on the night of the offense and the applicant's prior convictions. We conclude that the applicant has not satisfied the second prong of the *Strickland* test.

### IV. Conclusion

Having concluded that the applicant was not denied effective assistance of counsel, we deny relief.

MEYERS and JOHNSON, JJ., concurred in the result.

KELLER, P.J., filed a concurring opinion.

MEYERS, J., filed a concurring opinion.

KELLER, P.J., concurring in which COCHRAN, J., joined.

We held in *Sanchez* that the Texas Constitution bars the use against a defendant of his post-arrest, pre-*Miranda* silence.[1] I believe that this case is not controlled by *Sanchez* because applicant was not silent after he was arrested; he told the officers that he had been home all evening. His strategy at trial was to admit that he had been at the bar but persuade jurors that he did not know he had run over the victims. His testimony was to that effect. It was not counsel's questions, but applicant's trial strategy and his testimony that opened the door to cross-examination about what he did and did not say after his arrest.[2]

The habeas court found that trial counsel's most significant error was the invitation to comment on applicant's post-arrest silence. The Court assumes without deciding that this conduct was deficient, but holds that applicant fails to show harm. I would, instead, hold that the conduct was not deficient.

With these comments, I join the Court's opinion.

MEYERS, J., concurring.

I agree with the majority's holding that the applicant was not denied effective assistance of counsel. I write separately to note that this claim could have been raised on direct appeal and thus the decision to consider the merits in this case conflicts with the recent holding in *Ex Parte Townsend*, 137 S.W.3d 79, 81–2 (Tex.Crim.App. 2004), in which this Court stated, "when a defendant has an adequate remedy at law for his claim, he may not raise the claim in an application for a writ of habeas corpus."

---

1. *Sanchez v. State,* 707 S.W.2d 575 (Tex.Crim. App.1986).

2. *See, e.g., Anderson v. Charles,* 447 U.S. 404, 409, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980);

*Szmalec v. State,* 927 S.W.2d 213, 217 (Tex. App.-Houston [14th Dist.] 1996, pet. ref'd.); *Bell v. State,* 867 S.W.2d 958, 962 (Tex.App.- Waco [14th Dist.] 1994, no pet.).