IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






No. AP-75,383






EX PARTE GILBERT AMEZQUITA, Applicant





ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM HARRIS COUNTY





 JOHNSON, J., delivered the opinion of the Court in which Price, Womack,
Holcomb and Cochran, JJ., joined. Cochran, J., filed a concurring opinion. Hervey, J.,
filed a dissenting opinion in which Keller, P.J., Meyers and Keasler, JJ., joined.


O P I N I O N



 In deference to the trial court's findings of fact and conclusions of law, which support its
recommendation to grant the relief that applicant has requested, the Court grants relief.

 On February 6, 1998, the complainant in this case was brutally beaten at her place of
employment, Burk's Plumbing, (1) a business co-owned by her father. Two days before this assault,
she had had a heated verbal altercation with applicant, who was working there at the time of the
argument. Applicant was employed by a bail-bond company, (2) but had been loaned to Burk's
Plumbing, and after the argument, left the plumbing business and did not return. The complainant
remained in a coma for ten days (3) and, after recovering consciousness, was unable to tell police
investigators who had assaulted her. (4) On February 25, twenty days after the assault, when asked by
police who had hurt her, the complainant whispered the name "Gilbert." She eventually selected
applicant's photograph out of a photo spread, identified him at trial as her attacker, and testified at
trial that applicant committed the instant assault on her. (5) Applicant, a military veteran with no
criminal record, vehemently denied that he was the perpetrator and, at the writ hearings, presented
evidence in support of his contention that an employee of the plumbing company, Alonzo "Gilbert"
Guerrero, a parolee with a criminal history that included convictions for violent offenses, had
committed the assault. Testimony presented at the hearing included evidence connecting the
complainant's missing cell phone to Guerrero and showed that, shortly before the assault, there had
been a confrontation between the complainant's brother and Guerrero over Guerrero's behavior
toward the complainant. (6)

 Applicant asserted a number of claims, including allegations of ineffective assistance of
counsel. After conducting multiple evidentiary hearings, the trial court made findings of fact and
conclusions of law.

 The writ record includes copies of police offense reports that reflect that the complainant's
cell phone was missing after the assault and that the complainant had no idea where it was and had
not missed it until a police officer mentioned it. The trial court found that the complainant "did not
exactly remember what happened to her cellular phone." Those offense reports also reflect that
information was gathered regarding several telephone numbers that had been called from the
complainant's cell phone on the same day of, and shortly after, the assault. The trial court also found
that trial counsel did not make any effort to contact Christina Allen, a known user of the stolen cell
phone, or any of the owners of the telephone numbers dialed from the complainant's cell phone, and
that "an investigation of the cell phone records would have lead to evidence favorable to the
applicant in the primary case."

 The trial court also found "that trial counsel did not investigate information contained within
the police offense report which would have lead to information reflecting that an Alonzo Gilbert
Guerrero had some relevance to the primary case." It also specifically found that, "had trial counsel
investigated the names and cell phone numbers contained within the police offense report," he
"would have had reason to investigate Alonzo Gilbert Guerrero prior to or after Applicant's trial in
the primary case." Based upon writ-hearing testimony from an assistant district attorney, the trial
court found that, in 2002, that assistant district attorney, accompanied by a district attorney's
investigator, had spoken with Christina Allen, who had been linked to phone calls made from the
complainant's cell phone after the assault alleged in the primary case. The trial court found that the
assistant district attorney and investigator also met with a state-jail inmate, James Wilder, who told
them that he had been in possession of the complainant's cell phone immediately after the assault (7)
in the primary case and that he identified Alonzo Gilbert Guerrero from a photo spread as the person
from whom he had obtained the cell phone, but was unable to identify anyone in a photo spread
which contained applicant's photo. The trial court found that Wilder testified at the writ hearings
and identified Alonzo Gilbert Guerrero as person who gave him the cell phone in exchange for
drugs, that Wilder had "let Christina Allen and everybody else use the cell phone," and that he had
never seen applicant before.

 Based upon the writ-hearing testimony of another investigator from the district attorney's
office and the complainant's father, the trial court found that the complainant's father, who co-owned
the plumbing company at which this offense occurred, identified Alonzo Gilbert Guerrero as the
person who, on or shortly before the day of the assault, "had words" with his son, complainant's
brother, about Guerrero's harassment of the complainant.

 The trial court specifically found that, based upon the assistant district attorney's writ-hearing
testimony, Christina Allen was identified in the police offense report that was made available to trial
counsel prior to trial. That police offense report contains the name Christina Allen and lists the
telephone number of her aunt as a number where she could sometimes be reached. The trial court
also specifically found that Wilder received the complainant's cell phone from Alonzo Gilbert
Guerrero some time shortly after the commission of the offense (8) in the primary case, that Christina
Allen obtained the complainant's cell phone from Wilder, and that Allen made calls from the
complainant's cell phone.

 To obtain habeas corpus relief for ineffective assistance of counsel under the Strickland v.
Washington, 466 U.S. 668 (1984) standards, applicant must show that counsel's performance "was
deficient and that a probability exists, sufficient to undermine our confidence in the result, that the
outcome would have been different but for counsel['s] deficient performance." Ex parte White, 160
S.W.3d 46, 49 (Tex. Crim. App. 2004). Counsel's performance is deficient if it is shown to have
fallen below an objective standard of reasonableness. Id. at 51, and Strickland, 466 U.S. at 687-88. 
Prejudice to the applicant from counsel's deficient performance is judged by "whether counsel's
conduct so undermined the proper functioning of the adversarial process that the trial cannot be
relied on as having produced a just result." Ex parte Chandler, 182 S.W.3d 350, 353 (Tex. Crim.
App. 2005), quoting Strickland, supra, at 686. "As the Supreme Court explained, the purpose of the
constitutional requirement of effective counsel is to ensure a fair trial." Id.

 This Court has said that "[v]irtually every fact finding involves a credibility determination"
and has "repeatedly recognized that the fact finder is the exclusive judge of the credibility of the
witnesses." Ex parte Mowbray, 942 S.W.2d 461, 465 (Tex. Crim. App. 1996). When the trial court's
findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted
by this Court. Ex parte Evans, 964 S.W.2d 643, 648 (Tex. Crim. App. 1998); Ex parte Jarrett, 891
S.W.2d 935, 940 (Tex. Crim. App. 1994). This Court "afford[s] almost total deference to a trial
court's factual findings in habeas proceedings, especially when those findings are based upon
credibility and demeanor." White, 160 S.W.3d at 50.

 The writ record clearly supports and confirms the trial court's findings of fact . Because the
trial court's findings of fact are supported by the record, this Court accepts them as correct. Ex parte
Kimes, 872 S.W.2d 700, 701 (Tex. Crim. App. 1993).

 One of the trial court's conclusions of law states, "Applicant has shown that trial counsel was
ineffective in failing to conduct any independent investigation of the facts of this case and trial
counsel's failure to investigate the cellular phone records." It further concludes that applicant "was
harmed by trial counsel's failure to conduct any investigation of the facts of this case and trial
counsel's failure to investigate the cellular phone records[,]" and has shown that trial counsel "acted
deficiently in failing to investigate the cellular phone records and that Applicant was prejudiced from
the alleged deficient conduct since there has been a showing that additional investigation into the
cellular phone records would have produced evidence favorable to applicant's defense in the primary
case." It concluded that "the totality of the representation afforded Applicant was insufficient to
protect his right to effective assistance of counsel[,]" that "Applicant was denied the effective
assistance of counsel at trial[,]" and that "[t]rial counsel's insufficient representation denied
Applicant a fair trial, due process and due course of law." The trial court ultimately concluded that
applicant has demonstrated that his trial in the primary case was tainted by constitutional error, that
it is more likely than not that no reasonable juror would have convicted him in the light of the new
evidence, and recommended that this Court grant the relief requested.

 There is no direct evidence that the cell phone was taken at the time of the assault. The
complainant was beaten so badly that she was in a coma for ten days. At trial, the complainant
testified that there were no other witnesses to the assault. (9) No one testified to having witnessed the
theft of the cell phone. The trial court's findings of fact, which are based upon the appellate record
and which quote testimony elicited from the complainant, state that, just before the assault at the
plumbing business, the complainant went to get her cell phone. This indicates that the complainant's
cell phone was at the plumbing business at the time the assault occurred. After the assault, the
complainant could not remember what had happened to her cell phone, but shortly after the assault
it was used by persons who are strangers to the complainant. Together, these findings lead to a
strong implication that the phone was taken at or near the time of the assault.

 Both the trial court's findings of fact and the writ record indicate that Alonzo Gilbert
Guerrero was in possession of the complainant's cell phone shortly after the complainant was
attacked. The persons who used the cell phone late on the same day as the assault testified that they
had obtained it from Alonzo Gilbert Guerrero, who worked at the plumbing company and who had
recently been confronted about his behavior toward the complainant. The record thus supports a

 finding that Guerrero was at the plumbing business that day and that he took the complainant's cell
phone at or near the time of the assault. 

 While the writ-hearing testimony establishes that Guerrero was in possession of the phone
shortly after the assault, there is no evidence that applicant was ever in possession of the
complainant's cell phone. Neither is there evidence, other than the complainant's post-assault
testimony, applicant was at the plumbing business on the day of the assault.

 We could express confidence in the outcome of applicant's trial on a habeas record showing
that there was no evidence showing that the cell phone was taken by her attacker. However, we
conclude that, making reasonable deductions, the evidence does show that the complainant's cell
phone was taken by her attacker. The record contains no evidence that applicant was ever in
possession of the complainant's cell phone or that, other than the complainant's testimony, that he
was at the plumbing business on the day of the assault. The record does contain evidence that a
plumbing-business employee, Alonzo Gilbert Guerrero, a parolee with a history of violent crime and
who had recently been confronted about his harassment of the complainant, was at the plumbing
business the day of the assault and possessed the complainant's cell phone shortly after the attack. 
While there is no direct evidence that Guerrero was the attacker, the circumstantial evidence supports
such a conclusion. If circumstantial evidence may convict, it may, perforce, also acquit.

 This Court concludes, as did the trial court, that counsel performed deficiently by failing to
investigate the evidence involving the complainant's cell phone. We also conclude, as did the trial
court, that trial counsel's deficient performance undermines confidence in the result of the trial and
so undermined the proper functioning of the adversarial process that the trial cannot be relied on as
having produced a just result.

 Accordingly, we grant relief. The judgment in this cause is hereby vacated, and applicant
is remanded to the custody of the Harris County Sheriff to answer the charges set out in the
indictment. A copy of this opinion shall be sent to the Texas Department of Criminal Justice,
Correctional Institutions Division.

Filed: November 22, 2006

Publish
1. The business is variously called "Burk's Plumbing" (court of appeals opinion), "Burke Plumbing" (trial
court's finding of fact no. 109), Burke's & Burke's and Carol Plumbing and Burke's Plumbing and Utilities (the
complainant's father), and Bingham Plumbing (trial court's finding of fact no. 104). There is evidence in the habeas
corpus record that a number of different names for the business were used at various times.
2. There is conflicting testimony as to applicant's status. He is described variously as an employee of the
complainant's father, an employee hired and employed by Mr. Trejo, the majority stockholder in the plumbing
business, and an employee of Trejo's bail-bond business who had been loaned to the father by Trejo during
negotiations about the sale of the plumbing business to Trejo. There is no dispute that applicant was not working at
the plumbing business on the day of the assault. 
3. Hospital records included in the habeas corpus record note severe head injuries. DNA from fingernail
scrapings taken during a rape exam performed at the time of her admission was not tested, and the evidence was
destroyed soon after trial.
4. Police officers interviewed the complainant in the hospital on February 18 and February 25. On each
occasion she told them that she did not remember what had happened, who had assaulted her, or when she had last
had her cell phone or pager.
5. Eye-witness testimony is implicated in a large percentage of wrongful convictions. See, e.g., Bernal v.
People, 44 P.3d 184, 190 (Colo. 2002)(citing a study that concluded that "mistaken eyewitness identification is
responsible for more of these wrongful convictions than all other causes combined."); State v. Cotton, 351 S.E.2d
277 (N.C. 1987 )(wrongful conviction based on victim's eye-witness testimony); State v. Youngblood, 153 Ariz. 50,
734 P.2d 592 (Ariz. Ct. App. 1986)(same). See also, Gary L. Wells, Mark Small, Steven Penrod, Roy S. Malpass,
Solomon M. Fulero, and C.A.E. Brimacombe, Eyewitness Identification Procedures: Recommendations for Lineups
and Photospreads, 22 Law and Hum. Behav., No. 6, at 1 (1998)(study of 40 cases of DNA exoneration; "Of these
40 cases, 36 (or 90%) involved eyewitness identification evidence in which one or more eyewitnesses falsely
identified the person. One person was identified by five separate eyewitnesses. It is important to note that the 40
cases . . . were not selected because they happen to have eyewitness identification as the primary evidence. Instead,
these cases are simply the first 40 cases in the US in which DNA was used to exonerate a previously convicted
person. Hence, the kind of evidence that led to these wrongful convictions could have been anything. The fact that
it happens to be eyewitness identification evidence lends support to the argument that eyewitness identification
evidence is among the least reliable forms of evidence and yet persuasive to juries." Add head injuries sufficient to
result in a long coma and the identification may become even more suspect.
6. The trial court found that, at the 2002 writ hearings, John Thornton, an investigator with the Harris County
District Attorney's Office, testified that, soon after the assault, "[the complainant's father] identified Guerrero, who
had convictions in Harris County for assault, in one of the photospreads as the person who 'had words' with [his son]
about leaving the complainant alone." The complainant's father testified similarly at the hearing; saying that, on the
day of the assault, an Hispanic employee, whom he thought was named Guerrero, had had words with his son about
staying away from the complainant, but he later indicated that it may not have been on the same day but was "close
by to that." By the time of the writ hearing, the father had suffered a stroke and had difficulty with memory.
7. Wilder testified that 713-643-6783 was the telephone number of his partner "Booby." That number
appeared on the call list of the complainant's cell phone beginning at 2:14 p.m. on the day of the assault.
8. The police reports indicate that the assault took place sometime between 10:00 a.m. and 2:23 p.m. on
February 6. Allen and Wilder testified at the habeas corpus hearing that Wilder acquired complainant's cell phone
late in the day, described as "almost dark."
9. In contradiction to her testimony at applicant's trial, the complainant stated in an affidavit filed in the
complainant's civil suit against the plumbing business and her father that during the assault there was a "gang" of
other people watching, but not participating in, the assault and that she was unable to identify any of them. There
were no witnesses to the assault, but there was evidence that other persons were present during the complainant's
verbal confrontation with applicant.