In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-414 CR


____________________



CLINTON ORBIE MANNING, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 128th District Court


Orange County, Texas


Trial Cause No. A-060580-R






MEMORANDUM OPINION


 Appellant, Clinton Manning, appeals the trial court's judgment imposing a sentence
of twenty years confinement, following his plea of guilty to the offense of arson. Manning
contends that his trial counsel rendered ineffective assistance by failing to present additional
mitigation evidence at sentencing. Because we find that the record is insufficient to establish
ineffective assistance of counsel, we affirm the judgment of the trial court.


BACKGROUND


 Manning was indicted for arson after intentionally setting fire to the home of his ex-stepmother. The fire was started around 2:00 a.m. on August 25, 2006. At the time of the
fire there were five people sleeping in the house. All five individuals made it out of the
house without injury and the fire was extinguished before the property sustained any
significant damage. Manning pleaded guilty to the offense, but no agreement was reached
on punishment. Following a hearing on sentencing, the trial court assessed punishment at
twenty years confinement.

 Judgment was entered on August 6, 2007. Manning filed a notice of appeal on August
13, 2007. Manning filed a motion for new trial on August 31, 2007, which was overruled
by operation of law. In his sole issue on appeal Manning asserts that counsel provided
ineffective assistance at sentencing because counsel presented "little if no mitigation
evidence." Manning contends counsel failed to call witnesses to testify at sentencing to
provide the trial court a full understanding of Manning's background as to why he should be
granted deferred adjudication. According to Manning, "a reasonably prudent attorney would
have put forth more mitigation evidence to show the judge why he should give [Manning]
probation."

INEFFECTIVE ASSISTANCE OF COUNSEL 


 To prevail on a claim for ineffective assistance of counsel, appellant must show that
(1) counsel's representation fell below an objective standard of reasonableness; and (2) there
is a reasonable probability that but for counsel's unprofessional errors, the result of the
proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 686, 688-93,
104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Andrews v. State, 159 S.W.3d 98, 101 (Tex. Crim.
App. 2005). "Appellate review of defense counsel's representation is highly deferential and
presumes that counsel's actions fell within the wide range of reasonable and professional
assistance." Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "Appellant must
prove there was no plausible professional reason for specific acts or omissions of [his]
counsel." Bergeron v. State, No. 09-07-211 CR, 2008 WL 1746057, at *2 (Tex. App.--Beaumont Apr. 16, 2008, pet. ref'd) (not designated for publication) (citing Bone, 77 S.W.3d
at 836).

 "Any allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness." Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999). "Under normal circumstances, the record on direct
appeal will not be sufficient to show that counsel's representation was so deficient and so
lacking in tactical or strategic decisionmaking as to overcome the presumption that counsel's
conduct was reasonable and professional." Bone, 77 S.W.3d at 833. "[R]arely will the trial
record contain sufficient information to permit a reviewing court to fairly evaluate the merits
of such a serious allegation: '[i]n the majority of cases, the record on direct appeal is simply
undeveloped and cannot adequately reflect the failings of trial counsel.'" Id. In addressing
this issue, we recently stated:

 Appellant must bring forward a record from which the appellate court may
determine that trial counsel's performance was not based on sound strategy. 
Absent a record illuminating trial counsel's strategy and tactics, an appellate
court cannot know why counsel may have chosen not to object.


Bergeron, 2008 WL 1746057, at *3 (citations omitted). The record is void as to why trial
counsel took the course of action in question; it is extremely difficult to overcome the
presumption that counsel's performance was reasonable. See id. The record before us
neither establishes any specific mitigating evidence that existed at the time of sentencing, nor
does it establish that any failure on the part of trial counsel to more thoroughly develop
mitigating evidence was not based on trial strategy.

 At the sentencing hearing Manning's fiancé, Candace Rainwater, and Manning both
testified about Manning's early life. Rainwater testified that Manning "was treated bad when
he was younger" and that he was removed from his home by C.P.S. and spent time in foster
homes. In addition Manning testified that he had problems as a result of having been "kicked
around place to place." Manning testified that since the age of eleven he had lived in roughly
ten different homes between Iowa, Alabama, Texas and Missouri. Manning further testified
that he was shuffled around after spending time in a juvenile facility. Specifically, Manning
stated,

 They--I spent a rough guesstimate of three months in juve. Then they put me
in C.P.S. custody. Then I went to an emergency shelter in Richmond, Texas,
and then from there--I stayed there three months--went to a foster home over
in Hardin-Jefferson area, stayed there for roughly four months, and then went
to Buckner.


Manning testified that he remained at Buckner, a juvenile facility, until he turned seventeen
and was given permission to leave by his caseworker. When asked how all the moving
around impacted Manning, he testified, "it just has my mind shuffled." Manning further
testified that his prior experiences had made it difficult for him to form relationships, up until
he met Rainwater.

 According to Manning, the evidence presented at sentencing regarding the
circumstances of his childhood was insufficient. Specifically, Manning contends that
"[c]ounsel should have put witnesses on the stand that further explained the troubles Mr.
Manning had had as a child and how it had formed the individual he is today." Manning
asserts that there were case workers, foster parents and juvenile officers who could have
provided such testimony. Significantly, the record is silent as to the identity of any such
witnesses who may have been available to testify, or the specifics of any testimony that the
purported witnesses would have offered. While Manning's appellate counsel filed a motion
for new trial, Manning did not assert ineffective assistance of counsel in the motion, nor is
the motion supported by an affidavit. The motion for new trial does not provide any facts
to the trial court supporting Manning's ineffective assistance claim.

 Manning's counsel did submit several mitigating factors to the trial court including
the fact that this was Manning's first felony offense, and that Manning had virtually no
criminal history as an adult other than a charge for driving with an invalid license. In
addition, counsel presented testimony to show that Manning was remorseful for his actions
and that he believed no one was in the house when he set the fire. (1) Finally, counsel presented
significant testimony to establish that Manning had worked hard since the incident to make
changes in his life and become a more productive member of society. (2)

 Manning did not develop a record explaining trial counsel's conduct in not presenting
additional witnesses at punishment. See Thompson, 9 S.W.3d at 813-14. "In the absence of
a record that affirmatively demonstrates trial counsel's alleged ineffectiveness, we cannot
find trial counsel provided ineffective assistance." See Bergeron, 2008 WL 1746057, at *3
(citing Thompson, 9 S.W.3d at 813); see also Lawson v. State, No. 09-07-362 CR, 2008 WL
2229940, at *2-4 (Tex. App.--Beaumont May 28, 2008, no pet. h.). Therefore, Manning has
failed to meet the first prong of the Strickland test because the record does not affirmatively
establish that trial court's representation fell below an objective standard of reasonableness. 
 Moreover, Manning does not explain how additional testimony regarding his troubled
childhood would have impacted the trial court's assessment of punishment for his crime. Ex
parte White, 160 S.W.3d 46, 51-52 (Tex. Crim. App. 2004). Manning has not demonstrated
a reasonable probability that, but for counsel's alleged errors, the outcome would have been
different. See Bone, 77 S.W.3d at 833. We overrule his point of error and affirm the
judgment of the trial court.

 AFFIRMED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on July 29, 2008

Opinion Delivered October 29, 2008

Do not publish


Before Gaultney, Kreger, and Horton, JJ.
1. Manning's stepmother, Velvet Fontenot divorced Manning's father in April of 2006, 
roughly four months prior to the arson. We note that the record establishes that Manning
believed that his father was treated unfairly in the divorce. The record further establishes that
on the night of the arson incident Manning was under the influence of xanax and alcohol. 
Manning denied that he started the fire as a result of his anger over the way his father was
treated in the divorce, stating instead that he had a lot on his mind and it just all hit him at
once so he took xanax and started drinking. Manning testified that at the time of the incident
he wasn't technically in his "right mind" and that once he realized what he did he apologized. 

2. Specifically, Manning testified that since the incident he had found a woman that he
loved who had showed him how to trust people. Rainwater testified that the couple planned
to marry the following month in September of 2007 and that Manning provided for her and
her children as the primary source of income for the family. Manning testified that since the
arson incident he learned that its easier to stay out of trouble than to get into trouble. He
testified that if placed on probation he would be willing to comply with all probation terms,
including anger management. Manning further testified that he had a job lined up with
Akrotex pending the outcome of his case.