

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. AP-76,545

### EX PARTE JERRY WAYNE GREEN, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### FROM CAUSE NUMBER 1008352-A IN THE 179TH DISTRICT COURT
### HARRIS COUNTY

**KEASLER, J., delivered the unanimous opinion of the Court.**

O P I N I O N

Jerry Wayne Green ("applicant") was convicted of murder and sentenced to eighty years' imprisonment. After his conviction was affirmed,[1] applicant filed an application for writ of habeas corpus claiming that his trial counsel rendered ineffective assistance at the guilt and punishment phases of his trial. We disagree and deny relief.

## I. Factual and Procedural Background

### A. Trial

---

[1] *Green v. State*, No. 14-05-01223-CR, 2007 Tex. App. LEXIS 85, at *1 (Tex. App.—Houston [14th Dist.] Jan. 9, 2007, pet. ref'd).

On the evening of November 18th, 2004, applicant, Anthony Johnson, Sam Davis, Gary Marshall, Keith Spates, Andrew Toussaint, and several others were gambling at Marshall Tire Service, a tire shop in Houston, as they had frequently done in the past. The shop had separate tables for dice, dominoes, and poker. Johnson, Marshall, and Spates were gambling at the dice table, while applicant watched the game behind Johnson and to his left. Although not gambling, Toussaint was standing at the other gambling table nearby. As the rest of the players continued shooting dice, applicant shot Johnson in the back of the head.

At trial, Davis testified he saw applicant pull out a black revolver with his right hand and shoot Johnson in the back of the head. Spates testified he did not see who fired the gun, but after the shot rang out, he looked up and saw applicant with a revolver in his hand and Johnson was lying on the floor. Spates stated that he did not see Johnson exhibit a gun that night. Marshall claimed he did not see the actual shooting because he crouched down by the side of the dice table after he heard the gunshot. According to Marshall, Toussaint and applicant left the tire shop after the shooting. Toussaint also testified he did not see the shooting, but that when the gunshot was fired, he looked up toward the door and saw applicant. Toussaint did not see applicant with a gun, but conceded that it was possible that applicant did have a gun, but he just did not see it.

Davis, Spates, Marshall, and Toussaint all testified that after the shooting, applicant, as if in an attempt to explain why he shot Johnson, told Toussaint that he should leave and that Johnson was trying to rob Toussaint. Although Spates and Marshall testified they did

not see the actual shooting, they testified that when presented with a photo lineup during the investigation and asked if the shooter was among the pictures, they identified applicant as the one who shot Johnson. When identifying applicant as the shooter, Marshall wrote, "The guy who shot Craig [Johnson]" under applicant's photo. Spates also indicated near applicant's photo that applicant was the one who shot Johnson. Davis, Spates, and Toussaint stated that applicant was standing two to three feet behind Johnson and to his left. The medical examiner confirmed that Johnson's injuries and the presence of stippling were consistent with being shot in the back of the head at close range. Further, the path of the bullet's trajectory—downward, left to right, back to front—was consistent with a person who is six feet, three inches to six feet, four inches tall shooting a person who is five feet, eleven inches tall from behind. In examining Johnson's body, the medical examiner noted that Johnson was five feet, eleven inches. Davis estimated that applicant was six feet, three inches to six feet, four inches tall.

As the lead investigative officer, Sergeant Binford was responsible for the primary investigative responsibilities including interviewing the witnesses and investigating leads. According to Sgt. Binford, he received a number of anonymous tips indicating applicant was responsible for Johnson's death. In attempting to confirm these leads, Sgt. Binford discovered that many of the witnesses, including Davis, Spates, Marshall, and Toussaint, were evasive and refused to inculpate applicant by claiming not to know the shooter's identity. However, Davis, Spates, and Marshall later cooperated with the investigation and

identified applicant as the one who shot Johnson.

Applicant chose to testify at the guilt-innocence phase and expressly denied shooting Johnson. He did not dispute the testimony offered by the other witnesses or offer a defensive theory as to why he was not responsible for Johnson's death.

The jury found applicant guilty, and he was sentenced to eighty years' confinement. The Fourteenth Court of Appeals affirmed the judgment on direct appeal.

## B. Habeas Application

Through his application for writ of habeas corpus, applicant claims that he received ineffective assistance of counsel and specifically alleges the following deficient conduct by his trial counsel, which he asserts cumulatively prejudiced his defense:

- Counsel failed to object to Sgt. Binford's opinion that applicant looked "arrogant" in his photos;

- Counsel failed to move for a mistrial after the prosecutor asserted in a question that applicant had threatened his girlfriend with a gun;

- Counsel failed to file a motion in limine and object to the prosecutor impeaching applicant with a drug conviction that, arguably, was inadmissible;

- Counsel failed to object to the prosecutor's punishment argument that applicant did not show remorse;

- Counsel failed to object to, and even elicited, hearsay testimony that the police received information from unidentified persons that applicant committed the offense;

- Counsel failed to object to Sergeant Binford's testimony that applicant had a police record;

- Counsel elicited Sergeant Binford's opinions that the prosecution witnesses were telling the truth that applicant was guilty;

- Counsel failed to elicit that Davis told Sergeant Binford the night Johnson was shot that he did not see who shot Johnson;

- Counsel failed to object to the prosecutor's argument that the defense had to prove its theory of the case; and

- Counsel inaccurately stated during closing argument that applicant had sold drugs.

In evaluating the merits of the application, the trial judge held an evidentiary hearing at which applicant's trial counsel testified. At its conclusion, the trial judge recommended that the application be denied and entered findings of fact and conclusions of law stating that applicant's trial counsel (1) attempted to show Sgt. Binford's bias towards applicant and his lack of investigation and (2) developed a theory that the State's witnesses conspired to blame applicant for murdering Johnson and (3) Sgt. Binford's testimony furthered counsels' defensive theory. The trial judge additionally concluded that applicant's other claims failed to show that but for counsels' failures, a reasonable probability exists that the result of the proceeding would be different. However, the trial counsels' testimony and the lead trial counsel's affidavit at the evidentiary hearing are inconsistent and at times contradictory. Because the trial judge's findings of facts and conclusions of law regarding counsels' performance in furtherance of a trial strategy are inconsistent with the record, we have conducted an independent review of the record.[2]

---

[2] *See Ex parte Reed*, 271 S.W.3d 698, 727–28 (Tex. Crim. App. 2008).

## II. Standard of Review

"[T]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[3]  In analyzing claims of ineffective assistance of counsel under the Sixth Amendment, we apply the two-part framework announced by the Supreme Court of the United States in *Strickland v. Washington*.[4]  Under this framework, an applicant must prove by a preponderance of the evidence that: (1) "his counsel's performance was deficient"; and (2) "there is a 'reasonable probability'—one sufficient to undermine confidence in the result—that the outcome would have been different but for his counsel's deficient performance."[5]

To establish deficient performance, an applicant must show that "counsel was not acting as 'a reasonably competent attorney,' and his advice was not 'within the range of competence demanded of attorneys in criminal cases.'"[6]  He must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional

---

[3]  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

[4]  *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 686); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986).

[5]  *Ex parte Chandler*, 182 S.W.3d at 353 (citing *Strickland*, 466 U.S. at 694).

[6]  *Id.* at 354 (quoting *Strickland*, 466 U.S. at 687).

assistance."[7]   Therefore, an applicant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."[8]  We judge the reasonableness of an attorney's performance according to "prevailing professional norms"[9] and examine all of the facts and circumstances involved in a particular case.[10]  We "must be highly deferential to trial counsel and avoid the deleterious effects of hindsight."[11]

Under the second part of the *Strickland* analysis, an applicant must establish that the "constitutionally deficient performance prejudiced his defense—that is, he must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[12]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[13]   "[T]he difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'  The likelihood of a different result must be substantial, not just

---

[7]  *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 668); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)).

[8]  *Miniel v. State*, 831 S.W.2d 310, 323 (Tex. Crim. App. 1992) (citing *Strickland*, 466 U.S. at 689).

[9]  *Strickland*, 466 U.S. at 688.

[10]  *Id.* at 688, 690.

[11]  *Thompson*, 9 S.W.3d at 813 (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)).

[12]  *Ex parte Chandler*, 182 S.W.3d at 354 (quoting *Strickland*, 466 U.S. at 694).

[13]  *Strickland*, 466 U.S. at 694.

conceivable."[14] When making this determination, we consider any constitutionally deficient acts or omissions in light of the "totality of the evidence before the judge or jury."[15] We also consider whether multiple deficient acts or omissions cumulatively prejudiced the defense.[16]

Morever, when considering a trial judge's findings of fact, we give "almost total deference" to those findings when they are supported by the record.[17] We review a trial judge's conclusions of law de novo.[18]

### III. Counsels' Performance

A.     **Failure to object to Sergeant Binford's opinion that applicant looked "arrogant" in his photos**

Applicant claims that his trial counsel was ineffective for failing to object Sgt. Binford's opinion that applicant looked "arrogant" in comparing two photos. Applicant's complaint concerns the following exchange:

Prosecutor:   Is the person in the photograph and the person you had a photograph of, do they appear to be the same person?

---

[14] *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (quoting *Strickland*, 466 U.S. at 693, 697) (citation omitted).

[15] *Strickland*, 466 U.S. at 695; *Ex parte Nailor*, 149 S.W.3d 125, 130 (Tex. Crim. App. 2004).

[16] *See, e.g.*, *Ex parte Ellis*, 233 S.W.3d 324, 336 (Tex. Crim. App. 2007) (considering and rejecting the appellant's argument of prejudice by cumulative error); *Wright v. State*, 28 S.W.3d 526, 537 (Tex. Crim. App. 2000) (same).

[17] *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004).

[18] *Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005).

Binford:       They're the same person and they have the same mannerisms in each of the two separate photographs.

Prosecutor:   What mannerism is it that you're referring to?

Binford:       The head is cocked back in kind of an arrogant look down method both in the photograph that the police department has and in this photograph, also. Same characteristics the person—this person used on these two photographs that were taken at different times.

Applicant asserts that Sgt. Binford's testimony "injected an aspect of [applicant's] character that the defense had not placed in issue" and as such was inadmissible. We disagree with applicant's characterization of Sgt. Binford's testimony as character evidence.[19] Rather Sgt. Binford appeared to be describing applicant in the photographs, the manner in which applicant was holding his head, and what stood out to him in comparing the two photos. "To show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the objection."[20] Because Sgt. Binford's testimony was not character evidence, a trial judge would not have committed error in overruling an objection on that ground.[21] Accordingly, we cannot conclude that

---

[19] *See* 1 STEVEN GOODE, OLIN GUY WELLBORN III & M. MICHAEL SHARLOT, TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 404.2 (3d ed. Supp. 2011) ("Character is said to be a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty, temperance or peacefulness . . . . It would not seem that character encompasses physical characteristics such as being left-handed or having quick reflexes.") (internal citations omitted).

[20] *Ex parte White*, 160 S.W.3d at 53.

[21] *See id.*

failing to object to this testimony as impermissible character evidence is deficient performance.

**B.     Failure to move for a mistrial after the prosecutor asserted in a question that applicant threatened his girlfriend with a gun**

On cross-examination of defense witness Rubert Rice, the State asked Rice whether applicant carried a weapon. Rice claimed that applicant did not. The prosecutor then asked, "Mr. Rice, have you heard or did you know that the defendant, on November 7th of 2004, was—it was reported that [Green] had threatened his girlfriend, Margaret Hitchins with a .38 revolver?" The trial court sustained defense counsel's objection. However, applicant asserts trial counsel was ineffective for failing to request a mistrial. When considering whether to grant or deny a motion for mistrial, courts consider "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)."[22] Applicant fails to address whether a motion for mistrial was meritorious or demonstrate that had counsel sought the mistrial, it would likely have been granted. Applicant has failed to prove by a preponderance of the evidence that counsel performed deficiently on this claim.[23]

---

[22] *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011).

[23] *See Ex Parte Adams*, 768 S.W.2d 281, 287–88 (Tex. Crim. App. 1989) (stating that "the applicant assumes the burden of proving his factual allegations by a preponderance of the evidence[.]").

**C.     Failure to file a motion in limine and object to the prosecutor impeaching applicant with a drug conviction that arguably was inadmissible**

Applicant asserts counsel was ineffective for failing to file a motion in limine and object when the State impeached applicant on cross-examination with his 2001 felony conviction for possession of a controlled substance, for which he was sentenced to fifteen months in state jail. Applicant claims that the use of the conviction to impeach applicant was improper under Texas Rule of Evidence 609(a) because the probative value of the prior conviction's ‑admission did not outweigh its prejudicial effect. In evaluating whether the probative value of the conviction outweighs its prejudicial effect, courts balance the following factors: "(1) the impeachment value of the prior crime, (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history, (3) the similarity between the past crime and the offense being prosecuted, (4) the importance of the defendant's testimony, and (5) the importance of the credibility issue."[24] By failing to address how these factors apply to his case, applicant has failed to demonstrate that the trial judge would have committed error in overruling the objection.[25] Therefore, applicant has not satisfied his burden of establishing by a preponderance of the evidence that counsel was deficient in failing to seek a pre-trial motion in limine or object to the impeachment.[26]

**D.     Failure to object to the prosecutor's punishment argument that applicant**

---

[24] *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992)

[25] *See Ex Parte White*, 160 S.W.3d at 50.

[26] *See Ex Parte Adams*, 768 S.W.2d at 287–88.

**did not show remorse**

Applicant argues that counsel rendered ineffective assistance at the punishment phase of his trial by failing to object to the prosecutor's remark during closing argument that applicant had not shown remorse: "[Green] was man enough that night, and he should be man enough today, man enough to say, I'm sorry. But there has been no remorse for a year." However, the State's argument was preceded by applicant's counsel's argument: "Ladies and gentleman of the jury, we accept your verdict. We have no choice. I want you to look at my client. . . . We've discussed everything to this point. He is truly sorry for this man's death." Because the complained-of comment was made in response to defense counsel's argument, it was invited argument, and the trial judge would not have erred in overruling an objection.[27] We therefore hold that counsel's performance was not deficient by failing to object to the State's comment.

## IV. Prejudice

Having denied the above claims of ineffective assistance for failing to demonstrate deficient performance, we turn to the balance of applicant's claims: failure to object to and eliciting testimony that anonymous callers implicated applicant; failure to object to Sgt. Binford's testimony indicating that applicant had a criminal history and that the State's witnesses were truthful in their statements to him; failure to object to the prosecutor's closing

---

[27] *See Ex Parte White*, 160 S.W.3d at 50; *see also Nethery v. State*, 692 S.W.2d 686, 703 (Tex. Crim. App. 1985) ("The State's comment was invited by appellant's earlier argument, and as such does not constitute reversible error.")

argument that the defense had to prove its case; failure to impeach Davis through his prior inconsistent statement; and inaccurately stating during closing argument that applicant had sold drugs.

Applicant asks us to find prejudice based on the totality of the deficient performance and its cumulative effect. But even if we were to assume counsel was deficient on the remainder of his claims listed above, applicant has not satisfied the second prong of *Strickland* in light of the overwhelming evidence of his guilt presented to the jury.[28]

Even excluding the complained-of acts or omissions, there was ample evidence presented to the jury that applicant murdered Johnson. The jury heard from three witnesses who identified applicant as the shooter and placed applicant behind Johnson at the time of the shooting. Davis and Spates both testified that they saw a revolver in applicant's hand. Additionally, the forensic evidence corroborated the shooter's location as being two to three feet behind Johnson, and the bullet's trajectory was consistent with applicant shooting Johnson from behind and to his left. The jury also heard four witnesses all testify that, after the shooting, applicant tried to explain why he shot Johnson by stating to the other witnesses that Johnson was trying to rob Toussaint and by telling Toussaint to leave. We cannot say that, in the face of all the evidence the jury heard about the murder, it is reasonably probable

---

[28] *See Ex parte Martinez*, 330 S.W.3d 891, 904 (Tex. Crim. App. 2011), *cert. denied*, 131 S. Ct. 3073 (2011) ("It is unlikely, in the face of all the evidence with which the jury was presented, that the jury would have reached a different conclusion . . . and so we need not address the first prong of *Strickland*.").

the jury would have reached a different conclusion had applicant's trial counsel performed in the manner applicant now claims.

## V. Conclusion

Having concluded applicant was not denied effective assistance of counsel, we deny relief.

Delivered: December 14, 2011
Do not publish