02-10-127&128-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NOS. 02-10-00127-CR

          02-10-00128-CR

 

 


 
 
 Jason Michael Sorrells
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 355th
District Court OF Hood COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

Introduction

          Appellant
Jason Michael Sorrells asks us to reverse his convictions for unlawful
possession of a firearm, evading arrest, deadly conduct, and nine counts of
aggravated assault of peace officers, claiming that the evidence is insufficient
and that his trial counsel was ineffective.  We affirm.

Background
Facts and Procedural History

          Appellant
moved out of Lesley Arterburn’s trailer house on the outskirts of Granbury sometime
around Thanksgiving 2008.  One night just before Christmas, he went back to retrieve
some of his belongings.  Friends were visiting Lesley that night, and one of
them, Darla Jorden, walked outside to meet Appellant when he arrived.  Darla
asked him what he wanted; he said his tent; she gathered it from the porch, tossed
it into the back of his pickup truck, and asked him to leave.  He refused, claiming
there still were more things he wanted.  Darla replied that she did not see
anything else, repeated her request that he leave, and suggested that he could deal
with the other things later.  Appellant got upset, which resulted in his yelling,
swearing, and revving his engine.

          Lesley
and her other guests came out of the house.  Randea Cowen, who had known
Appellant for a couple of years, thought she could persuade him to come back for
the rest of his things some other time.  While she talked to him in the doorway
of his truck, Lesley walked up behind her.  Appellant and Lesley started arguing,
and their argument escalated to Appellant’s reaching past Randea and grabbing
Lesley by the neck.

          John
Ahnson stepped in at that point and engaged Appellant in a fist fight.  The two
tussled in the grass, on the concrete, and inside the bed of Appellant’s pickup
truck before Appellant retreated behind the steering wheel.  He gunned the
motor and plowed through the yard, swerving at the others as they dodged and scattered. 
After he left, Lesley and her guests retired to the house and called the sheriff’s
department.

          Appellant
stopped briefly at the trailer park where he was staying and then went to Curtis
Proctor’s house.  He asked Curtis if he could borrow a gun to take “deer
hunting” in the morning.  Curtis lent him a rifle with a scope and four rounds
of .30–06 ammunition.  Appellant took the rifle and hid in the woods across
from Lesley’s home.

          Peering
through the rifle scope from his hiding place, Appellant watched Patrol
Sergeant Michelle Berry and Deputy Toby Fries arrive and take statements from
Lesley and her friends. The deputies also photographed Lesley’s and John’s
scrapes and bruises.

          When
the deputies left, Beverly, who had ridden with Randea, went outside and waited
in Randea’s car parked beside the trailer.

          Randea,
Lesley, Darla, and Billy Wiley were in the kitchen laughing and joking with John,
who sat facing them on the living room couch.  Appellant slipped into the
trailer through the back door, crept into the living room, and lowered the
rifle to the back of John’s head, taunting, “You think this is f---ing funny? 
I’ll show you how funny it is.”

          Lesley
and Darla grabbed their cell phones.  Lesley dialed 911 on hers, handed it to
Billy, and walked toward Appellant while he tried to chamber a round.  The rifle
jammed.  Shaking the rifle, Appellant backed toward the front door.  When he
reached the door, Lesley shoved him through.  Appellant pushed back to get
inside, but Lesley and Darla held the door and locked it.  Randea ran to lock
the back door.  Lesley slid to the floor and sat there while Billy and Darla
spoke with the 911 operator.

          Appellant
climbed off the porch, ran several steps alongside the trailer, still shaking
the rifle.  He finally dislodged the jammed cartridge, which dropped to the grass
in the front yard.  Appellant chambered another round, aimed at the trailer,
and opened fire.

          The
first bullet pierced the wall so close to Darla that she could smell it.  She
dropped to the floor and started crawling to the back of the trailer.  Appellant
fired two more shots.  By the third one, Darla’s ears were ringing badly, but she
managed to stay on the line with the 911 operator.  As her friends scrambled
for cover, Lesley remained planted by the front door.

          When
he stopped shooting, Appellant ran into the dark toward the road.  Bullets had
punched eight entry holes in the front of the trailer and nine exit holes out
the back, leaving shattered windows and Christmas ornaments, bent and broken blinds,
and a perforated couch in between.

          The
911 operator dispatched Sergeant Berry and Deputy Fries back to Lesley’s
trailer to investigate the “shots fired call.”  They were joined by Sergeants
James Cromwell and William Watt and by Deputies Brad Duckett and William Drake.

          Granbury
Police Sergeant Cliff Clemons was on patrol when he heard 911 dispatch the
deputies.  He drove to the city limits and waited near the back entrance of Lesley’s
subdivision.  After a few minutes, he saw Appellant’s truck run the stop sign
and go south on Highway 51 “at a fairly good pace.”  Within a few minutes, Clemons
had closed the gap.  Appellant then made a U-turn and drove toward Clemons’s car,
causing the officer to swerve into the ditch.

          As
Appellant sped northbound up 51, Officer Dirk Sain, responding to Clemons’s call
for backup, approached southbound.  Sain narrowly missed a collision with the
pickup as it veered into his lane and forced him off the road.

          Having
learned that city police officers had narrowly missed a collision outside city
limits, Texas Department of Public Safety (DPS) Trooper Nick Duecker drove
southbound on 51 to investigate.  He saw Appellant followed by patrol cars with
lights flashing turn in front of him east onto Neri Road and race toward
Highway 144.

          When
the deputies reached Lesley’s house, they heard over the radio that city units
were chasing the suspect to 144.  After determining that no one at the trailer had
been injured, they left to assist in the pursuit.

          Appellant
reached 144, turned south, and started rocking the truck back and forth,
dislodging furniture and a spare tire from the bed.  The pursuing officers drove
around the obstacles and chased Appellant into the Nubbin Ridge RV Park, where his
truck skidded to a stop in front of a large tree between two trailers.

          Appellant
climbed out of the truck with the rifle, and pacing nervously, pointed the
rifle at officers in several patrol cars as they converged around the pickup.  He
tossed the rifle into the bed, jumped into the bed, shouted for the officers to
shoot him, picked up the rifle, cocked it, lifted it to his shoulder, and took
aim.  As the officers formed a semi-perimeter, some of them aimed weapons at
Appellant.  None fired, however, as it became apparent that at least one trailer
within the line of fire was occupied.  After a brief standoff, Appellant
surrendered and was arrested.

          The
grand jury returned two indictments charging Appellant with evading arrest,
unlawful possession of a firearm, three counts of deadly conduct, and eleven
counts of aggravated assault, including nine counts of aggravated assault against
peace officers.

          Appellant
moved for and was granted funds to hire a psychiatrist to determine Appellant’s
competency to stand trial and sanity at the time of the offense.  The
psychiatrist, Dr. Stephen Mark, examined Appellant, interviewed Appellant’s
family, reviewed his medical records, and determined that although Appellant was
suffering the effects of grief and alcohol at the time of the offense, and that
he had displayed faulty judgment, he was both competent to stand trial and legally
sane at the time of the offense.

          The
jury found Appellant not guilty on one count of aggravated assault and guilty
of evading arrest, unlawful possession of a firearm, one count of deadly
conduct, and all nine counts of aggravated assault on peace officers.[2] 
Appellant pleaded true to enhancement paragraphs alleging prior felonies, and
the trial court set his punishment at two years’ confinement in the state jail
for evading arrest, two twenty-year prison sentences for deadly conduct and
unlawful possession of a firearm, respectively, and nine life sentences for
aggravated assault.  All sentences were ordered to run concurrently.

          Appellant
filed and presented a motion for new trial and was granted a hearing, but offered
no evidence.  He argued only that the verdicts should be set aside as contrary
to the law and the evidence, and that the trial court had discretion to grant a
new trial in the interest of justice.  The motion was denied.

Sufficiency
of the Evidence

          In
his second and third issues, Appellant claims that the evidence is legally and
factually insufficient, respectively, to support the guilty verdicts on the
aggravated-assault-against-public-servant counts.  Because the court of
criminal appeals has eliminated the factual sufficiency standard of review from
this state’s criminal jurisprudence, and has held that the standard set out by
the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979) is the only standard of review that applies to
insufficiency-of-the-evidence claims, we overrule Appellant’s third issue and
consider only the second in determining whether the evidence is sufficient to
support the jury’s verdicts.  See Brooks v. State, 323 S.W.3d 893, 912
(Tex. Crim. App. 2010) (overruling Clewis v. State, 922 S.W.2d 126 (Tex.
Crim. App. 1996)).

          A
person commits aggravated assault when he commits assault as defined in section
22.01 of the penal code while using or exhibiting a deadly weapon.  Tex. Penal
Code Ann. § 22.02(c) (West 2011).  A person commits assault as defined in
section 22.01(a)(2) if he intentionally or knowingly threatens another with
imminent bodily injury.  Id. § 22.01(a)(2).  Aggravated assault is a
first-degree felony if committed against a person the actor knows is a public
servant while the public servant is discharging an official duty.  Id. §
22.02(b)(2)(B).  A peace officer is a public servant.  See Calhoun v. State,
No. 14-09-00936-CR, 2011 WL 398077, at *6 (Tex. App.––Houston [14th Dist.] Feb.
8, 2011, no pet.) (mem. op., not designated for publication).  The actor is
presumed to have known the assaulted person was a public servant if the person
was wearing a distinctive uniform or badge.  Tex. Penal Code Ann. § 22.02(c).

          Appellant
does not contest the sufficiency of the evidence to prove that the officers
were peace officers acting in their official capacities as such, that Appellant
knew that they were, or that Appellant used or exhibited a deadly weapon, i.e.,
a firearm.  What he does argue is that the evidence is insufficient because the
jury was only guessing as opposed to reasonably inferring from the evidence that
he intended to threaten the officers because the evidence shows that he only
intended to commit “suicide by cop” rather than assault.  We disagree.

          First,
we note that Appellant misstates the requisite intent element by asserting that
the evidence is insufficient to show that he intended to assault the
officers.  Appellant was found guilty on nine counts of aggravated assault of a
public servant as charged in the indictment by intentionally or knowingly threatening
the public servants with imminent bodily injury.  See id. §
22.01(a)(2) (West 2011).  So whether or not Appellant intended to assault the
officers, the requisite culpable mental state is to intentionally or knowingly threaten.

          Second,
and more importantly, Appellant’s argument assumes that intent to threaten and
intent to provoke assisted suicide are mutually exclusive.  Logically, they are
not.  Assuming for the sake of argument that Appellant’s goal was to provoke
the officers into killing him.  In order to achieve that goal, a credible
threat to the officers or to a third party would be required.  Without a
credible threat to justify the officers’ use of deadly force, it is unlikely
that the officers would use it.  In other words, Appellant’s intent to commit
suicide by cop would remain unrealized unless Appellant intentionally or knowingly
threatened the officers.

          Furthermore,
viewed in the light most favorable to the verdicts, the evidence is sufficient
to support a reasonable jury’s belief beyond a reasonable doubt that Appellant
intentionally or knowingly threatened all nine officers.  Each officer
specifically testified that Appellant pointed the rifle at him.  Before that, the
jury had already heard evidence that Appellant had grabbed a woman by the
throat, tried to mow down several people with his pickup truck in her front
yard, lied to a friend to get a high-powered rifle that he used to shoot holes
in a trailer-full of people, led police on a high-speed chase in which he ran
two patrol cars off the road by driving his pickup truck directly toward them, and
violently rocked his pickup truck back and forth until it disgorged a large
piece of furniture and a spare tire from its bed, which pursuing officers had
to maneuver around.  When he finally ended up cornered in the RV park,
Appellant disregarded officers’ repeated commands to disarm himself, shouted
for them to shoot him because he was “going to prison anyway,” racked his weapon,
and drew a bead on the officers.  We hold that the evidence is sufficient to show
that Appellant intentionally or knowingly threatened the officers.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Olivas v. State, 203
S.W.3d 341, 349 (Tex. Crim. App. 2006); Delay v. State, No.
02-05-00132-CR, 2006 WL 820391, at *3 (Tex. App.—Fort Worth Mar. 30, 2006, no
pet.) (mem. op., not designated for publication).  Accordingly, we overrule
Appellant’s second issue. 

Effective
Assistance of Counsel

          In
his first issue, Appellant contends that his trial attorneys (Counsel) made a
number of harmful mistakes that deprived him of his constitutional right to effective
assistance of counsel.  To prevail on this point, Appellant must show by a
preponderance of the evidence that Counsel’s representation fell below the
standard of prevailing professional norms and that there is a reasonable
probability that, but for Counsel’s deficiency, the result of the trial would
have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104
S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d 734, 740 (Tex.
Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62–63 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

          In
evaluating the effectiveness of Counsel under the first prong, we look to the
totality of the representation and the particular circumstances of the case.  Thompson,
9 S.W.3d at 813.  The issue is whether Counsel’s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland, 466 U.S. at 688–89, 104 S. Ct. at
2065.  Review of Counsel’s representation is highly deferential, and we indulge
a strong presumption that Counsel’s conduct fell within a wide range of
reasonable representation.  Salinas, 163 S.W.3d at 740; Mallett,
65 S.W.3d at 63.

          Rarely
does the record on direct appeal position an appellate court to fairly evaluate
the merits of an ineffective assistance claim.  Salinas, 163 S.W.3d at
740; Thompson, 9 S.W.3d at 813–14.  “In the majority of cases, the
record on direct appeal is undeveloped and cannot adequately reflect the
motives behind trial counsel’s actions.”  Salinas, 163 S.W.3d at 740
(quoting Mallett, 65 S.W.3d at 63).  To overcome the presumption of
reasonable professional assistance, “any allegation of ineffectiveness must be
firmly founded in the record, and the record must affirmatively demonstrate the
alleged ineffectiveness.”  Id. (quoting Thompson, 9 S.W.3d at
813).  It is not appropriate for us to simply infer ineffective assistance
based upon unclear portions of the record.  Mata v. State, 226 S.W.3d
425, 432 (Tex. Crim. App. 2007).  Further, we are very reluctant to denounce a
lawyer as ineffective absent an opportunity for the lawyer to explain his or
her actions on the record.  See Rylander v. State, 101 S.W.3d 107, 111
(Tex. Crim. App. 2003); Goodspeed v. State, 187 S.W.3d 390, 391 (Tex.
Crim. App. 2005) (holding that inquiry into counsel’s conduct—failure to ask
any questions during voir dire and exercise of peremptory challenges on jurors
who had already been excused—was needed to determine whether performance was deficient).

          For
these reasons, the court of criminal appeals and this court have often stated
that ineffective assistance claims are usually best addressed by a post-conviction
writ of habeas corpus.  See Ex parte White, 160 S.W.3d 46, 49 n.1 (Tex.
Crim. App. 2004); Thompson, 9 S.W.3d at 814 & n.6; Ex parte
Torres, 943 S.W.2d 469, 475–76 (Tex. Crim. App. 1997); Lopez v. State,
80 S.W.3d 624, 630 (Tex. App.––Fort Worth 2002), aff’d, 108 S.W.3d 293
(Tex. Crim. App. 2003); Ramirez v. State, No. 02-08-00396-CR, 2009 WL
3490875, at *1 n.4 (Tex. App.—Fort Worth Oct. 29, 2009, no pet.) (mem. op., not
designated for publication).  The case before us is yet another example where
this is true.  Through his appellate counsel, Appellant filed and presented to
the trial court a motion for new trial and obtained a hearing on the motion. 
However, at the hearing, which was transcribed on a one-page record, Appellant did
not assert that Counsel provided ineffective assistance and did not offer any evidence.

          Still,
Appellant criticizes Counsel for not taking four specific actions, which he contends
all worked to Appellant’s detriment at trial.  Although Appellant offered no
evidence on the issue of Counsel’s effectiveness, what is in the record does
not support Appellant’s claim.

          First,
Appellant faults Counsel for not filing a notice of intent to seek an insanity defense
as well as “other proper pleadings” to ensure that the jury could have heard
evidence and expert psychiatric testimony, which he asserts “could and likely
would have negated” the intent element required for “all the criminal charges” the
State had brought against him.  He asserts that Counsel failed to file “any
type of notice” of intent to seek an insanity defense but then acknowledges that
Counsel requested and that the trial court appointed a psychiatrist to examine
Appellant to determine whether he was insane at the time of the alleged offenses. 
Appellant’s “Motion to Appoint Psychiatrist to Assist in the Evaluation,
Preparation and Presentation of Defense” urged that a psychiatrist was
necessary to enable him to prepare for trial, present favorable evidence, and
provide expert opinion evidence “critical to a determination of [his]
competency to stand trial and of [his] sanity at the time of the offense.”  The
trial court granted the motion and appointed psychiatrist Dr. Stephen Mark, who
examined Appellant and opined that although Appellant certainly had some mental
and emotional problems, he was legally sane at the time of the alleged offenses. 
Still, Appellant argues that Counsel was ineffective for not following
statutorily prescribed procedures for admitting evidence supporting an insanity
defense and for not objecting to the trial court’s order appointing a
psychiatrist because it did not set out the elements of the insanity defense as
required by the code of criminal procedure.

          Dr.
Mark’s letter, however, implies that he was aware of the legal definition of
insanity.  Further, it reveals a fairly sophisticated understanding of the distinction
between certain mental health issues—such as anxiety, depression, grief and
substance abuse—and insanity in the legal sense, while also displaying a recognition
that although these issues may not meet the legal definition of insanity, they
may be offered to support mitigation of punishment.

          Moreover,
the facts of the case support the doctor’s opinion that Appellant was sane as
well as a reasonable conclusion by Counsel that the pursuit of an insanity
defense would have been in vain.  In order to prevail on an insanity defense, a
defendant must show that at the time of the offense, because of severe mental
disease or defect, he did not know that his conduct was wrong.  Tex. Penal Code
Ann. § 8.01(a) (West 2011).  The evidence in the record includes several
instances of Appellant’s displaying his awareness that what he was doing was
wrong.  For example, he lied to Curtis Proctor about what he wanted a rifle
for, he hid in the woods across from Lesley’s trailer while the deputies were
there, he fled after shooting up the trailer, and he continued fleeing to avoid
capture by law enforcement.  When cornered, he shouted for the officers to kill
him because he was “going to prison anyway,” and he finally surrendered by
hopping down from the bed of his pickup truck, kneeling to the ground, and then
laying face down with his hands behind him. 

          Given
the doctor’s opinion, especially in light of the facts of the case, Counsel
reasonably could have concluded that Appellant did not have a viable insanity
defense and that pursuing one any further than he did would have been futile. 
We will not declare a lawyer ineffective for declining to pursue a futile trial
strategy.  See Mooney v. State, 817 S.W.2d 693, 698 (Tex. Crim. App.
1991) (holding that counsel was not ineffective for failing to file futile
motions); Kinnamon v. State, 791 S.W.2d 84, 97 (Tex. Crim. App. 1990)
(failure to request lesser included charge not deficient where evidence did not
authorize lesser included charge), overruled on other grounds by Cook
v. State, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994).

          Appellant
lodges his next two criticisms at Counsel for not objecting to and not seeking
a limiting instruction on the admission of State’s Exhibit 34, the recorded 911
call from Billy Wiley, one of Lesley’s guests on the night of the shooting. 
Even if we were to assume that State’s Exhibit 34 was objectionable for the
reasons now suggested by Appellant on appeal, and that Counsel should have
objected to it, we fail to see how its exclusion would have affected the
outcome of Appellant’s trial.  Darla Jorden was on the line with the 911
operator at the same time Billy was.  Her tape was also admitted in evidence.  Appellant
does not claim Darla’s tape should have been excluded.  We have listened to
both tapes.  Shots are heard on both.  In fact, they are actually more clearly
heard on Darla’s.  Further, a number of witnesses testified that Appellant shot
at Lesley’s trailer while people were in it.  Because Appellant does not show
how admission of Billy’s tape harmed Appellant given that the same or similar
evidence was admitted through Darla’s, this complaint does not advance his claim
that Counsel was ineffective.

          Finally,
Appellant complains of Counsel’s not making various hearsay and speculation objections
but fails to demonstrate how these “failures” affected the outcome of his
trial.  Without a record showing Counsel’s reasons for raising or not raising
objections during trial, we presume that Counsel’s acts were part of a
reasonable trial strategy.  See Jackson v. State, 877 S.W.2d 768, 771
(Tex. Crim. App. 1994).  Moreover, given the evidence in the record that
Appellant does not contend could have been excluded, we hold that Counsel’s not
making the objections suggested by Appellant through hindsight would not have
affected the outcome.  Appellant’s first issue is overruled.

Conclusion

          Having
overruled Appellant’s issues, we affirm the judgments.

 

 

 

LEE GABRIEL
JUSTICE

 

PANEL: 
WALKER,
McCOY, and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 31, 2011









[1]See Tex. R. App. P. 47.4.





[2]The trial court granted
the State’s motion to dismiss two counts of deadly conduct and one count of
aggravated assault.