# NO. 12-12-00033-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JAMES EARL ROBERTSON,* *APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

James Earl Robertson appeals his conviction for unlawful possession of a firearm by a felon. In three issues, Appellant argues that there is insufficient evidence to corroborate the testimony of accomplice witnesses, the trial court erred by admitting inadmissible hearsay, and his trial counsel rendered ineffective assistance. We affirm.

### BACKGROUND

In October 2006, Appellant was convicted of unlawful possession of a firearm by a felon and sentenced to eight years of imprisonment. On June 18, 2011, he sustained a gunshot wound at his residence. At the time of the incident, Appellant was on parole for his October 2006 conviction until May 2014. Appellant's girlfriend, Kristian Faulkner, and his mother, Lydia Toshach, went to the hospital with Appellant. At the hospital, Faulkner told Officer Jessica Doughten, a patrol officer with the Tyler Police Department, that Appellant was shot by an unknown third party while he was working on his pickup truck. According to Officer Doughten, Faulkner stated Appellant was on his back, on the ground, and underneath the vehicle when he was shot. As the investigation proceeded, however, Faulkner told conflicting stories about how Appellant was shot.

Ultimately, Appellant was charged with unlawful possession of a firearm by a felon, a third degree felony.[1] The indictment also included one felony enhancement paragraph.[2] Appellant pleaded "not guilty." At trial, Faulkner testified that when the shooting occurred, she was standing in front of Appellant who was sitting on the bed. She stated that she and Appellant were holding the weapon when the gun fired. She also stated that they both had their hands on the gun, trying to dislodge a bullet.

Because of Faulkner's initial version of the incident, numerous officers with the Tyler Police Department were dispatched to Appellant's residence to investigate the shooting. Sergeant Matthew Leigeber, a patrol sergeant with the Tyler Police Department, testified that he was dispatched to Appellant's residence, and was the first police officer to arrive. He stated that he approached Appellant's residence on foot and saw a person suddenly appear around the corner of the house with a box of bullets in his hand. Sergeant Leigeber stated that the person, David Louis Nail, had a box of .22-caliber ammunition and a .22 caliber handgun. Sergeant Adam Tarrant, a patrol sergeant with the Tyler Police Department, testified that Nail told him Toshach called him at work and told him that he needed to come to the residence and pick up a gun.

Detective Gregg Roberts, a detective with the major crimes unit of the Tyler Police Department, testified that he interviewed Faulkner at the police department on the night of June 18, 2011. He stated that Faulkner said Appellant shot himself while cleaning the gun. Further, he testified, she denied shooting Appellant. Detective Craig Shine, also a detective with the major crimes unit of the Tyler Police Department, testified that in the early morning of June 19, 2011, he interviewed Faulkner. He stated that at first, Faulkner explained that Appellant was lying on his back working on a truck when he was shot. However, Detective Shine testified that this explanation was inconsistent with Appellant's injury. After speaking with Faulkner again, he operated under the theory that Appellant shot himself. Further, Detective Shine stated that he interviewed Appellant twice at the hospital. The first time he interviewed Appellant, he acknowledged that he had been shot, not that he had shot himself. He interviewed Appellant

---

[1] *See* TEX. PENAL CODE ANN. § 46.04 (a) (1)(West 2011).

[2] If it is shown on the trial of a third degree felony that the defendant has previously been finally convicted of a felony other than a state jail felony punishable under Section 12.35(a), on conviction the defendant shall be punished for a second degree felony. *See* TEX. PENAL CODE ANN. § 12.42(a) (West Supp. 2012.)

again a few days later after he began to recover from his injuries. Detective Shine stated that during the second interview, Appellant admitted he was trying to dislodge a bullet from the firearm when he accidentally shot himself. Appellant told Detective Shine that he had possession of the firearm for about ten minutes.

At the conclusion of the trial, the jury found Appellant guilty of unlawful possession of a firearm by a felon as charged in the indictment. Appellant elected to have the court assess punishment. After a sentencing hearing during which Appellant pleaded "true" to the felony enhancement paragraph, the trial court assessed his punishment at twenty years of imprisonment and court costs.[3] The trial court also granted the State's motion to cumulate sentences, and accordingly ordered Appellant's sentence to run consecutively with the sentence Appellant received for his parole revocation in connection with his October 2006 conviction. This appeal followed.

## ACCOMPLICE WITNESS TESTIMONY

In his first issue, Appellant argues that there was insufficient evidence to corroborate the testimony of two accomplices, Nail and Faulkner.[4]

## Applicable Law

A conviction cannot be had upon the testimony of an accomplice unless the testimony is corroborated by other evidence tending to connect the accused with the offense committed. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). Further, the corroboration is not sufficient if it merely shows the commission of the offense. *Id.* The accomplice witness rule is a statutorily

---

[3] An individual adjudged guilty of a second degree felony shall be punished by imprisonment for any term of not more than twenty years or less than two years and, in addition, a fine not to exceed $10,000.00. *See* TEX. PENAL CODE ANN. § 12.33 (West 2011).

[4] Appellant's argument is difficult to parse. He states the issue as "The verdict is contrary to the law and the evidence inasmuch as the verdict was predicated on uncorroborated accomplice testimony." In accordance with his stated issue, Appellant initially complains about uncorroborated accomplice testimony. Then, Appellant complains about the factual sufficiency of the evidence. However, the Texas Court of Criminal Appeals has held that the *Jackson v. Virginia* legal sufficiency standard is the only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (plurality op.). At the conclusion of his argument under his first issue, Appellant reverts to his complaint that testimony from an accomplice was not corroborated. Therefore, we construe Appellant's first issue as solely a complaint that the accomplice witness testimony was not adequately corroborated.

imposed review and is not derived from federal or state constitutional principles that define the legal sufficiency standard. *See Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

In order to determine whether the accomplice witness testimony is corroborated, we must eliminate all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect the defendant to the offense. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). The nonaccomplice evidence does not have to directly link the defendant to the crime, nor does it alone have to establish his guilt beyond a reasonable doubt; but rather, the nonaccomplice evidence merely has to tend to connect the defendant to the offense. *Id*. at 613. The appellant's presence in the company of the accomplice before, during, and after the commission of the offense coupled with other suspicious circumstances may tend to connect the defendant to the offense. *See Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Moreover, evidence that the defendant was near or at the place of the offense around the time of its occurrence is proper corroborating evidence. *See Burks v. State*, 876 S.W.2d 877, 888 (Tex. Crim. App. 1994).

## Application

We assume without deciding that Nail and Faulkner were accomplices. Faulkner testified that she was standing in front of Appellant who was sitting on the bed, that they were attempting to dislodge a bullet, and that they were holding the weapon when it discharged. Nail testified that Toshach called him on June 18, 2011, and informed him that Appellant was hurt and in the hospital. Then, he stated, Faulkner got on the telephone and asked him to go to the house, lock it, pick up the gun, and hide it. He stated that he found the gun at the foot of Appellant's bed. Faulkner's second version of the events to Officer Roberts and Nail's trial testimony was corroborated by Appellant's second statement to Detective Shine. Detective Shine testified that in his second statement, Appellant admitted trying to retrieve a bullet that was jammed in the firearm when he accidentally shot himself. Further, Detective Shine stated, Appellant admitted possessing the weapon for approximately ten minutes.

Finally, two additional pieces of evidence corroborate Faulkner's and Nail's testimony. First, Detective Shine testified that the weapon had a shell casing in its chamber and was "jammed," which was consistent with Faulkner's testimony. Second, Detective Shine stated that Appellant's gunshot wound and the trajectory of the bullet were not consistent with someone being

4

shot while lying on his back underneath a truck. Instead, he testified, the bullet's trajectory was consistent with someone shooting himself or being shot from the front. From this evidence, we conclude that there is direct and circumstantial corroborative evidence that tends to connect Appellant to the offense of unlawful possession of a firearm by a felon. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. We overrule Appellant's first issue.

**HEARSAY**

In his second issue, Appellant complains that the trial court erred by allowing hearsay testimony regarding Appellant's possession and control of the weapon.[5]

**Standard of Review**

A trial court has considerable discretion in determining whether to exclude or admit evidence. *See Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990); *State v. Dudley*, 223 S.W.3d 717, 724 (Tex. App.—Tyler 2007, no pet.). Absent an abuse of discretion, we will not disturb a trial court's decision to admit or exclude evidence. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005); *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). A trial court abuses its discretion if its decision falls outside of the "zone of reasonable disagreement." *See Montgomery*, 810 S.W.2d at 391. In conducting this review, we defer to the trial judge's assessment of the weight and credibility of the evidence, and view the evidence in the light most favorable to the trial court's decision. *See Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992). Further, we must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). We must also review the trial court's ruling in light of what was before the trial court at the time the ruling was made. *Id.*

A violation of the evidentiary rules that results in the erroneous admission of evidence is

---

[5] Again, Appellant's argument is difficult to decipher. He states the issue as "The trial court erred in permitting hearsay testimony over [objection] which was received to prove [Appellant] exercised control of the weapon." He then claims that Nail's testimony was "offered for the purpose of establishing that Appellant had some control of the weapon" because Appellant's mother called Nail and asked him to hide the gun. Appellant then discusses accomplice witness testimony and Rule 403 of the Texas Rules of Evidence. He discusses the probative value of Nail's testimony, but does not mention its prejudicial effect. Appellant then states, "Clearly, that testimony was inadmissible hearsay." He closes this portion of his brief with a discussion of harmful error. We construe Appellant's second issue as solely a complaint about a hearsay statement introduced during Nail's testimony.

5

nonconstitutional error. ***Kirby v. State***, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.); *see also* ***Johnson v. State***, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Nonconstitutional error is reversible only if it affects the substantial rights of the accused. TEX. R. APP. P. 44.2(b); ***Johnson v. State***, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). It is well settled that the admission of hearsay evidence does not constitute reversible error if the same facts were proven by evidence introduced without objection. ***Thomas v. State***, 621 S.W.2d 158, 164 (Tex. Crim. App. 1981) (op. on reh'g); ***Rosales v. State***, 932 S.W.2d 530, 536 (Tex. App.—Tyler 1995, pet. ref'd). Therefore, "counsel must object every time allegedly inadmissible evidence is offered." ***Hudson v. State***, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984).

**Applicable Law**

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Generally, hearsay is inadmissible. *See* TEX. R. EVID. 802. As a general rule, information acted upon is not hearsay because it is not offered for the truth of the matter asserted, but instead is offered to relate how a person happened upon the scene of a crime or accident. *See* ***Schaffer v. State***, 777 S.W.2d 111, 114-15 (Tex. Crim. App. 1989) (applying rule to testimony of police officer); *see also* ***Maynard v. State***, No. 08-01-00359-CR, 2003 WL 22451498, at *3 (Tex. App.—El Paso Oct. 28, 2003, pet. ref'd) (applying same rule to testimony acted upon by private citizen). Information acted upon, however, is hearsay when the intent of its offer is to prove the truth of the matter asserted. *See* ***Schaffer***, 777 S.W.2d at 115. This does not mean, however, that the declarant should be permitted to relate historical aspects of the situation replete with hearsay on the grounds that he was entitled to tell the jury the information he acted on. ***Id.*** at 114-15.

**Discussion**

Here, Appellant complains that the trial court erred by allowing into evidence a statement by Nail in which Faulkner told Nail to "pick the gun up and hide it."[6] Before Nail testified, the trial court heard objections to Nail's testimony regarding his conversation with Faulkner. The State argued that Nail's testimony was offered to explain how Nail was found in possession of the

---

[6] There is a conflict in the record as to whether the statement was made by Faulkner or by Toshach. Because Nail testified that the statement was made by Faulkner, we attribute the statement to her.

6

weapon and ammunition while leaving Appellant's residence on the night Appellant was shot. Appellant argued that this testimony was hearsay. The trial court overruled Appellant's objection.

We note that information acted upon is not hearsay because it is not offered for the truth of the matter asserted, but instead is offered to relate how a person happened upon the scene of a crime or accident. *See Schaffer*, 777 S.W.2d at 114-15. In this case, it was reasonable for the trial court to allow Nail's statement of his conversation with Faulkner into evidence because it explained why Nail arrived at Appellant's house and took possession of the weapon used in the shooting.

Further, Nail's testimony that he found the gun in Appellant's bedroom is not hearsay. *See* TEX. R. EVID. 801(d). And Appellant's statement to Detective Shine that he possessed the gun for approximately ten minutes and accidentally shot himself while trying to dislodge a bullet is not hearsay. A party's own statement offered against himself is not hearsay. *See* TEX. R. EVID. 801(e)(2). Moreover, evidence establishing Appellant's possession and control of the weapon was introduced without objection. This evidence included Faulkner's testimony that Appellant's mother called Nail and told him to hide the gun. She also testified that she told Nail where to find the gun. Appellant did not object to any of this testimony, and thus, any admission of hearsay evidence is harmless because the same facts were proven by evidence introduced without objection. *See Thomas v. State*, 621 S.W.2d at 164; *Rosales v. State*, 932 S.W.2d at 536. Accordingly, we overrule Appellant's second issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Appellant argues that he received ineffective assistance of counsel. Specifically, Appellant complains that his counsel was ineffective because he failed to (1) move to quash the indictment; (2) obtain a limiting instruction related to Nail's hearsay testimony of what Faulkner told him; (3) obtain a limiting instruction related to Faulkner's statements to the investigating officers; (4) request an accomplice witness testimony instruction in the jury charge; (5) request a "confession" of Appellant instruction in the jury charge, (6) object to Faulkner's testimony based on marital and spousal privilege; and (7) call Appellant's mother, Toshach, to testify.

**Applicable Law**

Claims of ineffective assistance of counsel are evaluated under the two step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The first prong of the *Strickland* standard requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064-65. To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to constitute ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996), *overruled on other grounds*, *Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998).

To satisfy the second prong of the *Strickland* standard, an appellant must show that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999). To establish prejudice, an appellant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and motivated by sound trial strategy. *See id*. It is an appellant's burden to rebut this presumption through evidence illustrating why trial counsel did what he did. *Beck v. State*, 976 S.W.2d 265, 266 (Tex. App.—Amarillo 1998, pet. ref'd). Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

An appellant cannot meet this burden if the record does not affirmatively support the claim. *See Garza v. State*, 213 S.W.3d 338, 347-48 (Tex. Crim. App. 2007) (without record indicating trial counsel's reasons for his actions or intentions, court presumed counsel's conduct was part of reasonable trial strategy); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (inadequate record on direct appeal to evaluate whether trial counsel provided ineffective

assistance); ***Phetvongkham v. State***, 841 S.W.2d 928, 932 (Tex. App.—Corpus Christi 1992, pet. ref'd, untimely filed) (inadequate record to evaluate ineffective assistance claim). A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See* ***Kemp v. State***, 892 S.W.2d 112, 115 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. ***Bone***. 77 S.W.3d at 835.

**Application**

Here, Appellant presents seven complaints against his trial counsel, but provides scant argument in support of each complaint. Additionally, Appellant's trial counsel was not given an opportunity to explain his actions, because there is no record of a postjudgment hearing regarding ineffective assistance of counsel. With this background information in mind, we address each of Appellant's complaints.

First, Appellant argues that his trial counsel should have moved to quash the indictment. An indictment must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense. ***State v. Moff***, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). Appellant contends that the indictment was "truly unintelligible." We have reviewed the indictment, and it is not even arguably unintelligible. Appellant was charged with possessing a firearm in June 2011, which is before the fifth anniversary of his release from community supervision following his conviction for the October 2006 felony. Because the indictment was specific enough to inform Appellant of the nature of the accusation against him so that he could prepare a defense, a motion to quash would have been properly denied by the trial court. *See* ***id***. Appellant's trial counsel is not ineffective for failing to file futile motions. ***Mooney v. State***, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991). Because Appellant did not demonstrate that his counsel's representation fell below an objective standard of reasonableness in his first complaint, he failed to satisfy the first prong of ***Strickland***.

Second, Appellant argues that his counsel should have sought a limiting instruction related to Nail's testimony of his conversation with Faulkner. A limiting instruction from the trial court would have instructed the jury not to consider Nail's testimony for the truth of the matter asserted, but only as an explanation of why Nail went to Appellant's bedroom and why he was found with

the weapon and ammunition. If we assume that trial counsel could have obtained a limiting instruction, Appellant failed to satisfy the second prong of *Strickland* because he did not explain how trial counsel's failure to request a limiting instruction caused him harm. *See Hernandez*, 988 S.W.2d at 772. With a limiting instruction, the jury would not have considered Faulkner's testimony for the truth of the matter asserted, but instead, only as an explanation as to why Nail went to Appellant's bedroom. That Nail found a firearm and ammunition in Appellant's bedroom is not hearsay, and thus, not affected by trial counsel's failure to request a limiting instruction. Faulkner's request to Nail was tangential to the issues in the case and at most an isolated error. *See Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) ("An isolated failure to object to certain procedural mistakes or improper evidence does not constitute ineffective assistance of counsel.").

Third, Appellant argues that his trial counsel should have sought a limiting instruction in the jury charge related to Faulkner's statements, "who was being impeached," to the investigating officers. Appellant's counsel sought, and obtained, a limiting instruction in the trial court's charge to the jury. Specifically, the jury was instructed that the testimonies of Detectives Roberts and Shine were admitted for the purpose of impeaching Faulkner and that if the jury found that these statements impeached Faulkner, the jury could not consider that impeachment testimony as evidence of Appellant's guilt. Because Appellant's trial counsel obtained this limiting instruction in the jury charge, the error he alleges his trial counsel committed did not occur.

Fourth, Appellant argues that his counsel should have requested an accomplice witness testimony instruction in the jury charge. In his brief, Appellant did not provide the language that the accomplice witness testimony instruction should have included. If by an accomplice witness testimony instruction, Appellant means an instruction that informed the jury that it could not convict Appellant based on the testimony of his accomplices unless such testimony was corroborated, there are certainly valid litigation strategy reasons for not requesting such an instruction. As we discussed earlier, the State produced ample evidence that corroborated Faulkner's and Nail's testimony, especially Appellant's statement to Detective Shine. Appellant's trial counsel could have concluded that it would have seemed irrational to argue that Faulkner's and Nail's testimony was not sufficiently corroborated by other evidence. Additionally, Appellant's entire case relied upon the jury's believing Faulkner's latest version of how Appellant

10

was shot. Thus, Appellant's trial counsel had sound litigation strategy for not having the jury equate Faulkner with the term "accomplice." Because Appellant did not demonstrate that his counsel's representation fell below an objective standard of reasonableness in his fourth complaint, he failed to satisfy the first prong of *Strickland*.

Fifth, Appellant argues that his counsel should have requested a "confession" of Appellant instruction in the jury charge. Again, in his brief, Appellant did not provide the language that the "confession" of Appellant instruction should have included. If by "confession" of Appellant instruction, Appellant means an instruction that his confession cannot be considered if the jury found it to be made involuntarily, there is no evidence to support such an instruction. *See Vasquez v. State*, 225 S.W.3d 541, 544-45 (Tex. Crim. App. 2007). A jury instruction on voluntariness of a confession should be submitted only if, based on the evidence at trial, a reasonable jury could have concluded that the statement was not voluntary. *See id.* (citing TEX. CODE CRIM. PROC. art. 38.22, § 6 (West 2005)). Here, there is no suggestion that Appellant's statement to Detective Shine was not voluntary. As such, Appellant's trial counsel did not act unreasonably in failing to request an instruction to which he was not entitled. Because Appellant did not demonstrate that his counsel's representation fell below an objective standard of reasonableness in his fifth complaint, he failed to satisfy the first prong of *Strickland*.

Sixth, Appellant contends that his trial counsel should have objected to Faulkner's testimony based on the marital and spousal privilege. Faulkner testified that she was Appellant's girlfriend, not his spouse. Appellant's trial counsel was not ineffective for failing to make futile objections. *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004). Because Appellant did not demonstrate that his counsel's representation fell below an objective standard of reasonableness in his sixth complaint, he failed to satisfy the first prong of *Strickland*.

Seventh, Appellant argues that his trial counsel should have called Appellant's mother, Toshach, to testify for him. In order to obtain relief on an ineffective assistance of counsel claim based on an uncalled witness, an appellant must show the witness was available to testify and that her testimony would have been of some benefit to him. *See id.* at 52. Here, there is no evidence that Toshach was available to testify or that her testimony would have been helpful to Appellant. Therefore, we cannot conclude that trial counsel was ineffective for failing to call Toshach as a witness. Because Appellant did not demonstrate that his counsel's representation fell below an

11

objective standard of reasonableness in his seventh complaint, he failed to satisfy the first prong of *Strickland*.

Because Appellant has failed to meet his burden under *Strickland*, we overrule Appellant's third issue.

**DISPOSITION**

Having overruled Appellant's three issues, we ***affirm*** the judgment of the trial court.

**BRIAN HOYLE**
Justice

Opinion delivered July 31, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

# COURT OF APPEALS
# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS
# JUDGMENT

**JULY 31, 2013**

**NO. 12-12-00033-CR**

**JAMES EARL ROBERTSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 114th Judicial District Court
of Smith County, Texas. (Tr.Ct.No. 114-1269-11)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*