

# IN THE
# TENTH COURT OF APPEALS

## No. 10-16-00154-CR

**CHARLES DURGIN,**

                                   **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                   **Appellee**

### From the 443rd District Court
### Ellis County, Texas
### Trial Court No. 38213CR

## MEMORANDUM OPINION

In one issue, appellant, Charles Durgin Jr., argues that his conviction for aggravated assault with a deadly weapon should be reversed because his trial counsel was ineffective. Because Durgin has not satisfied both prongs of the *Strickland* test, we affirm.[1] *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4. However, we do note that Durgin

## I.     INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, Durgin contends that his trial counsel was deficient for failing to object to: (1) a police officer's purported misstatement of the law regarding "law of parties"; (2) a police officer's crime-scene-reconstruction testimony; and (3) the State's closing argument. Durgin also asserts that the combined prejudicial impact of these errors supports a finding that his trial counsel was ineffective.

### A.     Applicable Law

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Id.*; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that counsel was so deficient as to deprive appellant of his Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Second, appellant must show that the deficient representation was prejudicial and resulted in an unfair trial. *Id.* To satisfy the first prong, appellant must show that his counsel's representation was objectively unreasonable. *Id.*; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). To satisfy the second prong, appellant must show that there is "a

---

was charged with aggravated assault with a deadly weapon based on a fight that occurred at a place known as East Main Grocery, Virgil's, or BG&W in Waxahachie, Ellis County, Texas, between Durgin and Kinnorise Dickerson. As a result of the fight, Dickerson sustained several cuts, including a slash wound on his face that extended from his mouth up to his cheek and bled profusely. Apparently, Durgin and Dickerson got into a fight over a woman, Roberta Vega. At trial, Durgin advanced a theory that Vega cut Dickerson with an eyebrow archer when she tried to break up the fight. Prosecutors asserted a different theory: that Durgin slashed Dickerson in the face and other places with a paring knife that was missing from a package of knives in Vega's residence and that Vega had allegedly given to Durgin. Much of the testimony at trial centered on who slashed Dickerson's face and how.

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. Our review is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63; *Thompson*, 9 S.W.3d at 813.

The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). "Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813.

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim.

App. 2003). Specifically, when the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

B.    **"Law of Parties" Testimony**

At the outset of our analysis of all of Durgin's complaints, we note that the record is silent as to trial counsel's trial strategy; as such, we examine the challenged conduct to determine if it is "'so outrageous that no competent attorney would have engaged in it.'" *Roberts*, 220 S.W.3d at 533 (quoting *Goodspeed*, 187 S.W.3d at 392). That said, in his first sub-issue, Durgin asserts that his trial counsel was deficient for failing to object to the following testimony from Corporal Josh Oliver of the Waxahachie Police Department regarding the "law of parties":

> Q [The Prosecutor]:    Let's pretend that Roberta did stab him and made all those cuts. You're familiar in the state of Texas with law of parties; is that correct?

A [Corporal Oliver]:     That's correct.

Q:     That someone who aids, abets, encourages, directs in the commission of the crime is just as guilty?

A:     That's correct.

Q:     So by that token, if they're saying she's the one that did it, she would be aiding him in the commission of that crime; is that correct?

A:     That's correct.

Q:     And they would both be guilty, is that correct—

A:     That is correct.

Q:     —they are parties?

In the above testimony, Corporal Oliver did not testify that Durgin was guilty as a party; instead, Corporal Oliver merely agreed that, under the posed hypothetical, it was possible that Durgin could be a party to the offense even if Vega was the person who had actually cut Dickerson's face, assuming that Durgin aided, abetted, encouraged, or directed the commission of the offense. *See* TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011); *see also Wooden v. State*, 101 S.W.3d 542, 547-48 (Tex. App.—Fort Worth 2003, pet. ref'd) (noting that, if the evidence shows that the defendant was present at the scene and encouraged the commission of the offense by acts, words, or other agreement, the evidence is sufficient to convict under the law of parties). Nevertheless, Corporal Oliver correctly stated that it is possible for Durgin and Vega to be guilty of an offense as parties,

even if Vega was the only one who cut Dickerson's face. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *see also Wooden*, 101 S.W.3d at 547-48. Accordingly, Durgin has not made an adequate showing that the trial court would have erred in overruling an objection to the above-mentioned testimony provided by Corporal Oliver. *See Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011) ("To successfully assert that trial counsel's failure to object amounted to ineffective assistance, the applicant must show that the trial judge would have committed error in overruling such an objection." (citing *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996))).

Furthermore, Durgin has failed to make an adequate showing that, but for trial counsel's purported error, the outcome of the proceeding would have been different. The jury charge did not include an instruction on law of parties, and the law of parties was not discussed during closing argument by either party. And when the jury asked a question during deliberations regarding the law of parties, the trial court instructed the jury that all the law applicable to the case was contained in the charge. Thus, the jury was instructed that the law of parties did not apply to the case, and nothing in the record suggests that the jury disregarded or was confused by these instructions. *See Resendiz v. State*, 112 S.W.3d 541, 546 (Tex. Crim. App. 2003) ("We presume the jury follows the trial court's instructions." (citing *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998))); *see also Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996) ("[W]e assume that

the jury would follow the instruction as given, and we will not reverse in the absence of evidence that the jury was actually confused by the charge.")  We cannot say that Durgin has satisfied either prong of the *Strickland* analysis with this complaint.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see also Thompson*, 9 S.W.3d at 812.

## C.      Crime-Scene-Reconstruction Testimony

In his second sub-issue, Durgin asserts that his trial counsel was ineffective for failing to object to "impermissible crime reconstruction testimony," which refers to Corporal Oliver's viewing of the surveillance video of the incident and other evidence. Durgin specifically complains that Corporal Oliver was not qualified as an expert and that his lay opinion was not based on events that he personally observed.  As such, his testimony was impermissible, and trial counsel erred in failing to object to this testimony.

With regard to the distinction between lay and expert witnesses, the Court of Criminal Appeals has stated that:

> Both lay and expert witnesses can offer opinion testimony.  Rule 701 covers the more traditional witness—one who "witnessed" or participated in the events about which he or she is testifying—while Rule 702 allows for a witness who was brought in as an expert to testify.  A witness can testify in the form of an opinion under Rule 701 if the opinions or inferences are (a) rationally based on his or her perceptions and (b) helpful to the clear understanding of the testimony or the determination of a fact in issue. . . . Thus, the witness's testimony can include opinions, belief, or inferences as long as they are drawn from his or her own experiences or observations.
>
> . . . .
>
> When a witness who is capable of being qualified as an expert testifies regarding events which he or she personally perceived, the evidence may

be admissible as both Rule 701 opinion testimony and Rule 702 expert testimony. A person with specialized knowledge may testify about his or her own observations under Rule 701 and may also testify about the theories, facts and data used in his or her area of expertise under Rule 702. . . . This court has never addressed the issue of whether someone with training and experience can testify as a lay witness but the Courts of Appeals have admitted such testimony as both lay and expert opinion. . . . Thus, although police officers have training and experience, they are not precluded from offering lay testimony regarding events which they have personally observed.

> . . . .

A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences. However, as a general rule, observations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. This is true even when the witness has experience or training. Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert. The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge.

*Osbourn v. State*, 92 S.W.3d 531, 535-37 (Tex. Crim. App. 2002) (internal citations omitted).

In his testimony, Corporal Oliver opined that, after viewing the surveillance video of the incident and other physical evidence, he believed that Dickerson's face was cut when Durgin first punched him in the face. More specifically, Corporal Oliver noted: "I think he [Durgin] was holding the paring knife in a way that when he punched him [Dickerson], it cut his face open. . . . In my opinion[,] after reviewing the video and knowing that it's a paring knife that was most likely used there on the scene, I believe he was holding it by the handle with the blade coming out of the bottom of his hand."

Corporal Oliver also testified that, based on his review of the surveillance video and his training and experience, it appeared that Durgin did not punch Dickerson in a normal fashion; rather, Durgin made a more slashing motion when hitting Dickerson's face.

It is this testimony that forms the basis of Durgin's complaint that Corporal Oliver was not offered as an expert witness; he did not possess any expertise to offer these opinions; and he could not offer a lay opinion because he did not personally observe the incident. We are not persuaded by Durgin's contentions because Corporal Oliver was testifying to his opinion based on the evidence he collected and viewed, including the surveillance video that demonstrated what transpired during the incident. *See id.*; *see also Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) ("We held the extra-judicial statements were not inadmissible hearsay because they were admitted not to prove the truth of the matter asserted, but rather to explain how the defendant came to be a suspect."); *Lee v. State*, 29 S.W.3d 570, 577-78 (Tex. App.—Dallas 2000, no pet.) ("Police officers may testify to explain how the investigation began and how the defendant became a suspect.").

We therefore conclude that Durgin has failed to make an adequate showing that the trial court would have erred in overruling an objection to the above-mentioned testimony provided by Corporal Oliver. *See Ex parte Martinez*, 330 S.W.3d at 901; *see also Ex parte White*, 160 S.W.3d at 53; *Vaughn*, 931 S.W.2d at 566. And like before, Durgin does not show that, but for trial counsel's purported error in failing to object to the crime-

scene-reconstruction evidence, the outcome of the proceeding would have been different.

Therefore, we cannot say that Durgin has satisfied either prong of the *Strickland* analysis.

*See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see also Thompson*, 9 S.W.3d at 812.

## D.     The State's Closing Argument

In his next sub-issue, Durgin complains about the following argument made by

the State during closing:

> Let's be clear.  She never confessed to an aggravated assault with a deadly weapon, did she?  She said, "I must have accidently cut him at the time I was trying to stop the fight and so I went and, you know, Cab is here."  Let's remember what was happening.  Cab was doing what?  Beating the crap out of Mr. Dickerson (sic), right?  That's what he is doing.  But at that moment, she has the opportunity to get behind him, right, on the ground with this tool thing in her hand—
>
> . . . .
>
> —and she has the opportunity to slice him.  Accidentally.  I mean, "accidentally I went on the shoulder and I sliced him."  So it would have had to have gone like that (demonstrating).
>
> Do you think that tool would have caused this requiring 40 stitches? That doesn't make any sense.
>
> And then I said, "Just one time?"
>
> "Just the one time, yes."
>
> Okay.  Then how does he get this, this, this, and how does the Defendant get cut on his arm, too?  It's not possible.  What she says is impossible.  And why would she lie?  Oh, my God, she got arrested, right? We arrested her in court?  Right.  Let's just see what happens.  What's the consequence, right?
>
> So he gets not guilty, right, because the true person is here.

She then has her trial because now she's going to go on trial. He then gets to testify at her trial. We can't retry him. He gets to say, "I lied," you know, to protect her. And then here we go. And no one is ever held responsible for slashing Mr. Dickerson's face. That is not justice.

Proper jury argument must encompass one of the following: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the entire record. *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *see Brown*, 270 S.W.3d at 570 (citing *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988)). "It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper." *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973); *see Brown*, 270 S.W.3d at 570.

The above closing argument constitutes a reasonable deduction from the evidence, a plea for law enforcement, and a response to Durgin's defensive theory at trial—that Vega, not Durgin, was the one who slashed Dickerson's face. In other words, the prosecutor's closing argument addressed Vega's motive to lie to protect Durgin—her boyfriend. Therefore, based on the foregoing, the trial court would not have abused its discretion in overruling any objection trial counsel would have made based on this

argument; accordingly, trial counsel cannot be determined to be ineffective for failing to object to this argument. *See Ex parte Martinez*, 330 S.W.3d at 901; *see also Ex parte White*, 160 S.W.3d at 53; *Vaughn*, 931 S.W.2d at 566. As such, Durgin has not satisfied the first prong of *Strickland*. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Moreover, we also note that Durgin has not adequately explained on appeal how, but for trial counsel's purported error in failing to object to the prosecutor's closing argument, there is a reasonable probability that the outcome of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812.

### E.    The Combined Impact of the Purported Errors

Finally, Durgin contends that the cumulative errors of counsel warrant reversal. We disagree. The Court of Criminal Appeals has stated: "It is conceivable that a number of errors may be found harmful in their cumulative effect." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). But the *Chamberlain* Court continued that non-errors may not, in their cumulative effect, cause error. *Id.* In our analysis of Durgin's complaints, we did not conclude that there was error; therefore, we cannot conclude that Durgin was harmed by the cumulative effect of a number of non-errors. *See id.* Based on the foregoing, we overrule Durgin's sole issue on appeal.

## II.    CONCLUSION

We affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
(Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed April 26, 2017
Do not publish
[CR25]

*(Chief Justice Gray concurs in the Court's judgment to the extent it affirms the judgment of the trial court.  A separate opinion will not issue.)

