**Affirmed and Memorandum Opinion filed January 25, 2024.**



**In The**

## Fourteenth Court of Appeals

---

### NO. 14-22-00835-CR

---

**RICHARD SPILLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court
Harris County, Texas
Trial Court Cause No. 1627280**

---

### MEMORANDUM OPINION

In this appeal from a conviction for aggravated assault with a deadly weapon, we consider one complaint of charge error, and several additional complaints of ineffective assistance of counsel. For reasons explained more fully below, we overrule all of the complaints and affirm the trial court's judgment.

# BACKGROUND

This case began as a conflict between two young boys, but it ended with their parents' exchange of gunfire.

The complainant, an eight-year-old boy, got into a physical altercation with appellant's son, who was twelve. The cause of the altercation was the latter's taking of the former's basketball. When the complainant's mother learned of the altercation, she tried to speak with appellant's son, but according to her, he had already left the scene.

Later that same day, appellant approached the complainant's mother, and they got into a heated argument, with him being under the impression that she had been "jumping on [his] kids." Appellant threatened to "shut the block down," which the complainant's mother construed as a threat to shoot.

After making that threat, appellant left the scene, but he returned shortly thereafter with the mother of his son and several other individuals. Another heated argument ensued, but this time, the complainant's mother pulled out a gun to show that she was armed. She did not point it at anyone, and the crowd left without incident.

Appellant then returned for a third time and fired multiple shots at the complainant's mother, who was outside on a porch. By then, her husband was nearby, and he returned a few rounds of gunfire from the gun that his wife had previously brandished. None of the parents was ever struck, but one of the bullets hit the complainant in the knee, causing serious damage.

Appellant was charged with shooting the complainant. He pleaded not guilty to that charge, and his case proceeded to a trial by jury.

Appellant did not testify during the proceedings, but a pretrial letter that he wrote to the judge was introduced into evidence. In that letter, appellant admitted to shooting a firearm, but he denied that he shot the complainant. He asserted instead that he had merely engaged in deadly conduct.

Appellant's counsel continued with that defense. More specifically, counsel attempted to establish that appellant could not have shot the complainant, because the complainant had been behind a vehicle at the time of the shooting, and there was evidence that certain bullets had entered the vehicle, but they had not exited it. Counsel suggested that the complainant was struck by a ricocheted bullet that had been fired from his own father. Counsel also suggested that there was reasonable doubt about appellant's guilt because the crime scene had been disturbed when the complainant was receiving treatment in the hospital. In particular, a neighbor had wiped away all of the blood on the porch, which, according to counsel, precluded any sort of blood splatter or trajectory analysis.

The jury rejected appellant's defensive arguments and convicted him as charged.

## CHARGE ERROR

Appellant argues first that the trial court erred by failing to submit jury charge instructions on the laws of self-defense and defense of a third person. Appellant acknowledges that his counsel did not request the submission of those defensive issues. Nevertheless, appellant argues that the trial court should have submitted them sua sponte, and that its failure to do so amounted to error.

Appellant's argument is plainly foreclosed by *Posey v. State*, 966 S.W.2d 57 (Tex. Crim. App. 1998), which held that the trial court has no duty to sua sponte instruct the jury on unrequested defensive issues. *Id.* at 62. Appellant acknowledges

3

this contrary authority, but he suggests that it was somehow called into doubt by *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). We disagree. *Bruen* held that the U.S. Constitution protects an individual's right to carry a handgun for self-defense outside of the home. *Id.* at 8. That case says nothing about a Texas trial court's responsibility in submitting a charge to the jury. Appellant's arguments to the contrary lack merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his next issue, appellant raises several complaints of ineffective assistance of counsel. We review such complaints under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, appellant must prove by a preponderance of the evidence that his counsel's performance was deficient, and that the deficient performance was so prejudicial that it deprived him of a fair trial. *Id.* at 687.

## I.      Failure to Call or Inquire About a Witness

The probable cause affidavit identified a witness who stated that he saw appellant "run to the scene with a black firearm in his hand, raise the firearm, fire it multiple times, then run away from the scene on foot." This witness did not testify during the trial.

Appellant now claims that his counsel was ineffective by not calling this witness to testify. Had this witness testified, appellant argues that counsel could have developed evidence that appellant fired his weapon at the complainant's parents because he reasonably believed that they were going to use deadly force against him or his family.

"To obtain relief on an ineffective assistance of counsel claim based on an uncalled witness, the applicant must show that [the witness] had been available to

testify and that his testimony would have been of some benefit to the defense." *Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004). Appellant has made no showing here that the uncalled witness was available to testify. Accordingly, this ineffectiveness claim must fail.

Appellant relatedly argues that counsel was ineffective by not questioning the complainant's parents—who did testify at trial—about what this other witness had told investigators.

When assessing counsel's performance, our review is highly deferential and begins with the strong presumption that counsel's decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The effect of this presumption is that we cannot ordinarily conclude that counsel's performance was deficient on a silent record. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Counsel must usually be given an opportunity to explain his actions and omissions before he is condemned by a court for being unprofessional or incompetent. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

In this case, appellant did not file a motion for new trial complaining of counsel's performance, nor did counsel otherwise testify or file an affidavit explaining his strategic decisions. When the record is silent, as it is here, we cannot conclude that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). This is a difficult standard, and for at least two reasons, we cannot say that counsel's failure to ask questions about this witness's out-of-court statements rises to that level. First, any such questions would have elicited inadmissible hearsay. And second, appellant has

made no showing what the hearsay testimony would have revealed, or whether it would have benefited the defense.

## II.     Failure to Request an Instruction on a Justification Defense

Appellant argues next that counsel was ineffective by failing to request a charge instruction on self-defense or defense of a third person.

Assuming for the sake of argument that the evidence raised either of these justification defenses, the decision to propound such a defense depends upon trial strategy and tactics. *See Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). Indeed, a competent attorney can reasonably decide that a defense should not be argued to a jury, even though the defense might technically be available. *See Vasquez v. State*, 830 S.W.2d 948, 950 n.3 (Tex. Crim. App. 1992).

The record here does not affirmatively reveal counsel's reasons for not propounding a justification defense. Thus, the record does not rebut the strong presumption that counsel's actions and omissions were reasonably professional.

Nor can we say that counsel's decision to forgo a justification defense was so outrageous that no competent attorney would have forgone the same. Had counsel pursued a justification defense, as appellant believes he should have, then counsel would have been required to convince a jury that appellant believed his use of force was immediately necessary under the circumstances. That burden would have been difficult in light of appellant's assertion in his letter that he retrieved his gun to "scare" the complainant's mother, rather than because he believed his use of force was immediately necessary. Relatedly, there was video evidence showing that appellant chose to leave his confrontation with the complainant's mother, only to then grab a firearm and return to the scene firing, rather than keep his distance altogether. Counsel could have reasonably concluded from this evidence that

6

appellant's defensive chances were greater by simply arguing that there was reasonable doubt as to which shooter was responsible for shooting the complainant. Under *Strickland* and this silent record, we do not second-guess that strategy.

## III. Failure to Object to Hearsay

Appellant's next complaint focuses on the following exchange between the prosecution and the complainant's mother:

Q.     If someone were to make an argument that it was not the defendant's bullet that struck your child but it was your husband's bullet that struck your child, what would you have to say to that?

A.     My husband had a .380. The defendant had a 9 millimeter. The bullet—it was a pretty big hole because the bullet that was on the side of my door, too, they—it was—there was, I guess, the—I don't know what you call it—the bullet or whatever was inside the door. The detective took that; and the doctor—the surgeon, he told me it was .9, too, from the wound.

Appellant asserts that the mother introduced inadmissible hearsay when she testified about the surgeon's assessment of the caliber of the bullet, and appellant believes that counsel was ineffective for failing to object to that hearsay.

Even if we assumed for the sake of argument that counsel's failure to object amounted to deficient performance, appellant could not demonstrate that he was prejudiced unless he showed a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. The record forecloses that showing for two reasons. First, the surgeon—who testified after the complainant's mother—explained that, in his capacity as a doctor, he has "absolutely" no way of determining the caliber of a ballistics weapon, especially in cases like this where there was an exit wound and no projectile. And second, the physical evidence indicated (and appellant admitted in his letter) that he

7

had used a .45 caliber weapon, not a 9 millimeter. Thus, appellant has not shown that he was prejudiced by the unsolicited hearsay testimony that the complainant was struck by a bullet from a 9 millimeter firearm.

## IV.    Failure to Produce Evidence in Punishment

Counsel did not present any mitigating evidence during the punishment phase of trial. Appellant now challenges that omission. Drawing attention to his handwritten letter, where he stated that he was a football coach, appellant argues that counsel should have put on testimony from the children who played on his football team or their parents.

But appellant has not identified any children or parents by name who were available to testify. Nor has he indicated how their testimony would have been beneficial. Just as before, when appellant raised a complaint about counsel's failure to call a witness, appellant has not demonstrated any entitlement to relief.

## V.     Failure to Subject the Prosecution's Case to "Meaningful Adversarial Testing"

Appellant lastly presents an assortment of complaints from six different moments of the trial, which, in his estimation, collectively demonstrate that there was a constructive denial of counsel altogether, such that prejudice should be presumed. *See Cannon v. State*, 252 S.W.3d 342, 349 (Tex. Crim. App. 2008) ("If an appellant can demonstrate that defense counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, so that there was a constructive denial of the assistance of counsel altogether, then prejudice, because it is so likely, is legally presumed.") (citing *United States v. Cronic*, 466 U.S. 648 (1984)).

Appellant first highlights one moment where the trial court interrupted a witness and advised counsel to "please join us, sir." Appellant speculates from this statement that counsel had fallen asleep during the proceedings.

8

In his second complaint, appellant draws attention to counsel's misidentification of a witness. Counsel referred to the mother of appellant's children as Jashontae, when her actual name is Jounette.

Relatedly, in his third complaint, appellant focuses on a moment where counsel could not identify the complainant's father on the surveillance video. Appellant speculates from this misidentification that counsel must not have viewed the video before trial.

In his fourth complaint, appellant criticizes counsel's misidentification of the community where the shooting took place. Counsel identified the community as Thomas Village, when the actual name is Tierwester Village.

In his fifth complaint, appellant criticizes counsel for believing that one evidence marker in a police sketch signified a shell casing, when the evidence marker actually signified a bottle of bleach.

And in his sixth complaint, appellant criticizes counsel for making the following italicized point in his closing statement:

> I would like you to consider the testimony of [the complainant's mother]. You also heard in the video—y'all saw her brandish, pull a pistol, threaten. And what would you do if someone threatened you or your little child? Well, you think it would upset you, be emotional and maybe not react in a civilized manner? *No, it doesn't give you the right to go get your weapon and shoot*; but I want you to consider the credibility of [the complainant's mother].

Appellant asserts that this italicized point "argued against what should have been his theory of the case: that [he] acted in self-defense or defense of others."

A defendant is constructively denied the assistance of counsel when his lawyer is "inert" or a "potted plant"—i.e., when the lawyer, although physically and mentally present in the courtroom, fails to provide (or is prevented from providing)

9

*any* meaningful assistance. *See Ex parte McFarland*, 163 S.W.3d 743, 752 (Tex. Crim. App. 2005). That can happen when the lawyer is asleep or unconscious, *id.*, but the record here does not affirmatively establish that appellant's counsel was sleeping, as appellant has asserted. Nor can we say that counsel's misidentification of two witnesses, a community, or an evidence marker—all of which were isolated errors—demonstrates that counsel was completely unable to provide any meaningful assistance. The same is true about appellant's complaint of counsel's closing argument, which merely establishes (with the benefit of hindsight) appellant's disapproval of counsel's chosen defensive strategy.

The record establishes that counsel was able to craft a meaningful defense by arguing that the complainant was struck by a ricocheted bullet from his father, rather than a shot from appellant. Even though the jury ultimately rejected this theory, there was some inferential support for it in the evidence. Indeed, counsel may have reasonably believed that he was obliged to follow this theory, given that it was the same theory that appellant had asserted in his pretrial letter to the trial judge. For all of these reasons, we reject appellant's suggestion that counsel failed to subject the prosecution's case to any meaningful adversarial testing.

Appellant alternatively suggests that even if prejudice cannot be presumed, then he should still be entitled to relief. We disagree. Even if we assumed for the sake of argument that counsel's performance was deficient in each of the moments cited above, there is no reasonable probability that the outcome of the proceedings would have been different but for counsel's unprofessional errors.

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Bourliot and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).